[No. 20070.  Department Two.  January 4, 1927.]

## J. C. MINSHULL, *as Supervisor of Banking, Respondent,* v. AMERICAN SURETY COMPANY OF NEW YORK, *Appellant,* NATIONAL SURETY COMPANY *et al., Respondents.*[1]

[1] SUBROGATION (1, 8)—SURETIES OR GUARANTORS—EXTENT OF RIGHT. Where a county was protected by the official bonds of the county treasurer against wrongful acts of the official, and by depository bonds to the amount of $60,000 authorized to be deposited in a county depository bank, and the county treasurer made a wrongful overdeposit in the depository bank, which failed owing the county in excess of the maximum authorized deposit, making the depository sureties liable to the county for the full amount of the depository bonds and the county treasurer's sureties liable to the county for the balance of the loss, dividends declared upon administration of the assets of the insolvent bank should be pro rated between the sureties on the official bond and the sureties on the depository bonds in the ratio in which each of the two classes of sureties discharged their obligation to the county; in view of the equitable principles of subrogation and Rem. Comp. Stat., §§ 5562, 5566, requiring public funds to be put in designated depositories by the treasurer limited to the maximum amount, and providing that these requirements shall not in any way relieve the county treasurer from liability upon his official bond as such.

Appeal from a judgment of the superior court for King county, Findley, J., entered April 13, 1926, upon findings in favor of the plaintiff, in an action to determine the rights of surety companies to subrogation, tried to the court.  Affirmed.

*Hastings & Stedman,* for appellant.

*Hugh M. Caldwell (John P. Lycette,* of counsel), and *Williams & Cornelius,* for respondents.

MACKINTOSH, J.—This action is here upon an agreed statement of facts, from which it appears that the plaintiff is the state supervisor of banking, who is

[1] Reported in 252 Pac. 147.

liquidating the business of the Citizens State Bank of Prosser, Benton county, Washington, which went into liquidation on June 21, 1924; that prior to that date one Macy was the county treasurer of Benton county and had deposited money coming into his hands as treasurer in the Citizens State Bank, and on that day the bank was indebted to him, as treasurer, on account of money deposited as public funds, $129,952.44; that to secure this indebtedness Macy, as county treasurer, had, in addition to surety bonds hereafter mentioned, collateral security of said bank from which Benton county has since realized the sum of $25,828. That the penalty of all depository bonds was sixty thousand dollars, these bonds being executed by the bank, as principal, and by the surety companies who here appear as respondents, as sureties. That, after the failure of the bank, Macy made demand upon the surety companies furnishing the depository bonds, and each of them paid the full amount of its obligation, and at the time of payment, and in consideration thereof, Macy, as county treasurer, executed an assignment of all his rights and remedies against the bank to the extent of the sums paid.

That on December 12, 1922, the appellant executed two certain bonds for the sum of fifty thousand dollars each to Benton county, Washington, as official surety for Macy as county treasurer; that these bonds were accepted as Macy's official bonds, and Macy entered upon his duties as county treasurer under those bonds on January 8, 1923. That, after the application of the sixty thousand dollars, received from the respondents on their surety depository bonds, and the sum of $25,828.51, realized from other collateral security, there remained unpaid on account of the deposits in the Citizens State Bank the sum of $43,-

975.73, which sum, together with interest, was paid by the appellant to Benton county on November 7, 1924, the total amount paid being $45,002.99. That, upon such payment, Benton county, through its board of county commissioners, by proper resolution, and Macy, as county treasurer, executed an assignment to the appellant of the claims of Benton county against the Citizens State Bank. That on August 21, 1924, Macy, as county treasurer, presented to the plaintiff a verified claim for the sum of $114,729.24, and on September 3, 1924, Macy, as treasurer, offered proof of a preferred claim for $15,075. Both of these claims were rejected as preferred claims, but were allowed as general claims.

The plaintiff, having in his possession a sufficient amount to declare a first dividend on the claims against the Citizens State Bank, paid the amount of such dividend on the county treasurer's deposit into the registry of the court, and began this action for the purpose of having determined the rights of the depository surety companies and the appellant, leaving to the court to determine how the dividends should be apportioned among the two classes of sureties. The appellant claimed the right to be reimbursed in full for the $45,002.99, with interest, out of the dividends of the insolvent Citizens State Bank, before the payment of any dividends to the respondent depository sureties on account of their payments to the county treasurer of the penalties on their respective bonds. The respondent depository sureties claim the right to pro rate with the appellant, the surety on the treasurer's official bond, according to their respective payments, in the dividends declared out of the assets of the Citizens State Bank. Each of the bonds furnished by the respondents contained the following provisions:

"Whereas the amount of such funds upon deposit and to be deposited with said principal is subject to withdrawal, increase or decrease, as said county treasurer may determine; and

"Whereas said bank has contracted to pay said county interest upon the average daily balance . . .;

"Now therefore the condition of this obligation is such that if said principal shall at the beginning of each month, render the said treasurer a statement showing the daily balance of such county moneys held by it during the month next preceding and the interest thereon and how the same has been credited, and shall well and truly keep all such sums of money so deposited or to be deposited, and the interest thereon subject at all times to the check and order of said treasurer, and shall make prompt and faithful payment thereof on checks drawn by such treasurer to the extent of all moneys on deposit by said treasurer with said principal and shall promptly and faithfully calculate, credit and pay such interest aforesaid, and in all respects save and keep said county and said treasurer harmless and indemnified for and by reason of making the said deposit or deposits, then this obligation shall be void, otherwise to remain in full force and effect."

It was also provided in each of these bonds that the surety should be liable for such proportion of the moneys deposited with the bank by the treasurer for which payment was refused upon demand of the treasurer as the penalty of the bond bears to the total amount of depository bonds and other securities for deposits furnished by the principal to the county treasurer,

"Provided, however, that if such other bonds or securities are insufficient for any reason to fully make together with the aforesaid proportion under this bond the full amount of principal and interest demanded and refused and interest thereafter accruing to time of actual payment to the county treasurer of said county, or if the surety on any other such bond shall have been

adjudged to be or be insolvent, then and in that event the surety hereunder shall be liable to the county treasurer of said county to the full amount of loss sustained by reason of such insufficiency.''

The bonds furnished by the appellant were conditioned as follows:

''Now therefore if the said principal shall well, truly and faithfully execute and perform the duties of said office according to all laws now in force, and shall well, truly and faithfully perform the duties of said office according to any law that may be enacted subsequent to the execution of this bond, and shall pay all moneys received by him for the use of the county as the commissioners shall from time to time direct, except where special provision is made by law for the payment of such moneys, by order of any court, or otherwise, then this obligation shall be void, otherwise to remain in full force and effect.''

[1]    The question for determination is whether the appellant is entitled to be paid in full before the respondents are permitted to participate in the dividend declared out of the assets of the Citizens State Bank, or whether the appellant and the respondents should participate in such dividends in proportion to the several amounts paid by them to make good the loss to Benton county by reason of the deposit by the county treasurer of county funds in the Citizens State Bank. In the trial court it was held that the respondents should participate *pro rata* with the appellant in the dividends, and from this decree an appeal has been taken.

Rem. Comp. Stat., § 5562 [P. C. § 1835] provides that each county treasurer shall designate banks as depositories for public funds kept by him as such treasurer ''and no county treasurer shall deposit any public money in banks, except as herein provided.'' The following section, 5563 [P. C. § 1836] provides that,

before the designation of any bank shall become effectual and entitle the county treasurer to make deposits therein, such bank shall file with the county clerk surety bonds to such county treasurer "in the maximum amount of deposits designated by said treasurer to be carried in such bank." Section 5566 [P. C. § 1839] provides that these requirements in regard to county depositories shall not in any way relieve the county treasurer from liability upon his official bond as such treasurer, or any surety upon such bond.

The question in this case has been extensively discussed from the standpoint of subrogation. Subrogation is an equitable theory, and courts adopt it or reject it in accordance with the equities of the situation. *Cottrell's Appeal*, 23 Pa. St. 294; *Lidderdale v. Robinson*, 2 Brock 159, Fed. Cas. No. 8337; *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840; *University State Bank v. Steeves*, 85 Wash. 55, 147 Pac. 645; *National Surety Co. v. State Savings Bank*, 156 Fed. 21; *Arnold v. Green*, 116 N. Y. 566, 23 N. E. 1.

It would seem important, therefore, to determine the ultimate justice of the claims of these two classes of sureties. The official bond was given to the county to protect it against any unauthorized and illegal acts of the county treasurer, and the depository bonds, although running to the county treasurer, were for the benefit of the county and were to protect the county against any loss that it might suffer by reason of the treasurer having deposited county funds in the depository banks. Each of the classes of bonds was given for the purpose of protecting the county against loss. The county at all times was the owner of the funds. The relation of debtor and creditor existed, therefore, between the bank and the county, and as a consequence the depository bonds were for the county's protection,

in addition to the protection which it had by reason of the treasurer's official bond. *Marx v. Parker,* 9 Wash. 473, 37 Pac. 675; *State v. Krug,* 12 Wash. 288, 41 Pac. 126; *Fairchild v. Hedges,* 14 Wash. 117, 44 Pac. 125; *State ex rel. Port of Seattle v. Gaines,* 109 Wash. 196, 186 Pac. 257; *Moses Lake State Bank v. Bell,* 128 Wash. 523, 223 Pac. 587; *State ex rel. Titlow v. Centralia,* 93 Wash. 401, 161 Pac. 74; *Ferry v. King County,* 2 Wash. 337, 26 Pac. 537.

The bonds given by the depository sureties fully protected the county to the extent of a deposit of sixty thousand dollars, which was all that the treasurer was authorized to put in the Citizens State Bank of Prosser. His having a deposit in that bank of money belonging to the county in excess of sixty thousand dollars was an act prohibited by the statute and one which was illegal. For the loss which was occasioned by this illegal deposit, the official bond was liable. But no liability existed against the depository sureties for any of this excess deposit. Had the treasurer failed to require from the Citizens State Bank any depository bonds, the official bond would have been liable for the sixty thousand dollars which has been paid by the depository sureties. Each of the sureties has discharged the obligation which it owed to the county. Those obligations arose from the deposit of county funds in the Citizens State Bank. The dividends on the county's deposit, which the insolvent bank will pay, should equitably be apportioned to the two classes of sureties in the ratio in which they have discharged the county's loss. It would be inequitable to prefer the official bond, which was furnished for the purpose of insuring the treasurer's careful and faithful performance of his duties, when the treasurer, through his own negligence, did not procure from the bank the security which the law directed him to procure.

Counsel have furnished the court with a multitude of citations of authorities upon different interesting subsidiary questions in this case, but have apparently been able to discover but two cases which present facts sufficiently similar to those under consideration here to render them authoritative precedents. One of these cases, *Cole v. Myers,* 100 Neb. 480, 160 N. W. 894, except for the amounts involved, is exactly the same in its facts as is the instant case and the question for determination is the precise one which is before us. In addition, the statute in Nebraska in regard to the requirement of depository banks furnishing bonds is compulsory, as is ours. There the supreme court of Nebraska held that the dividends from the insolvent bank should be paid *pro rata* to the two classes of sureties. In that case, Nuckolls county, Nebraska, had on deposit in a bank which failed the sum of $13,189.61. The county treasurer had under the deposit law secured a bond from the bank to the extent of $10,000 and his deposit in the bank to that amount was proper. The balance of $3,189.61 was deposited in violation of the statute, there being no security for that excess. The treasurer had furnished an official bond to the county. After the failure of the bank he filed with its receiver a claim for the entire amount of the deposit, and the depository surety paid $10,000, the entire amount of its liability, and the surety on the official bond paid to the county the balance. The court, after stating these facts, said:

"The treasurer's surety calls attention to the liability of the bank's surety for the bank's obligation to safely keep the deposits of county funds, to pay 'each and every part thereof, upon the written demand of the county treasurer,' and to save and keep the people of Nuckolls county and the county treasurer harmless and indemnified. In this connection the treasurer's

surety argues that, having paid the debt of $3,189.61, owing by the treasurer and the bank to the county, it is by subrogation entitled to all of the rights and remedies of both; that the county and the treasurer, after receiving $10,000 from the bank's surety, are entitled to dividends on $13,189.61, until the overdeposit of $3,189.61 is fully paid; that the effect of allowing the bank's surety to draw dividends before the overdeposit is paid from the assets of the bank is to reduce the penalty in the depository bond below $10,000, thus injuring the county and the treasurer; that the bank's surety is not entitled to the benefits of subrogation until the bank's debt is paid in full. On the other hand the bank's surety insists that, when it discharged its full liability by paying $10,000, which would have been the maximum amount of its principal's indebtedness to the county, except for the illegal overdeposit made by the treasurer, it was, to the extent of $10,000, subrogated to all of the rights of the county.  .  .  .

"In the present case what is the contract of suretyship into which the bank's surety entered? The depository bond for $10,000 was executed under a statute providing:

" 'For the security of the funds so deposited under the provisions of this article the county treasurer shall require all such depositories to give bonds for the safekeeping and payment of such deposits and the accretions thereof, which bond shall run to the people of the county and be approved by the county board and conditioned that such depository shall, at the end of each and every month, render to the treasurer and county board a statement in duplicate, showing the several daily balances and the amounts of moneys of the county held by it during the month, and the amount of the accretion thereof, and how credited.  .  .  .

" 'The treasurer shall not have on deposit in any bank at any time more than the maximum amount of the bond given by said bank in cases where the bank gives a guaranty bond.  .  .  .'

".  .  .  In entering into the contract of suretyship the surety had a right to assume that the treasurer

would comply with the statute and limit his deposit to $10,000. The bond was given to protect legal deposits of county funds to the contractual and statutory maximum of $10,000 and not as security for an illegal deposit in excess of that sum. Both the surety's liability and the debt protected by the suretyship are limited to $10,000. In paying the amount of the bond the bank's surety not only discharged its legal liability, but also discharged the entire debt to secure which the bond was given. The terms of the contract of suretyship, when considered with the statute and with the public duties of the treasurer, will admit of no other construction.

"After the bank's surety paid the county the bank's debt in the sum of $10,000, it became a creditor of the bank to that extent and the county, by reason of the treasurer's illegal over-deposit, remained a creditor in the sum of $3,189.61. The trial court held that the two creditors described should share ratably in the dividends declared by the bank's receiver. The ruling is challenged as erroneous for the reasons that the treasurer, when the bank failed, became personally liable to the county for the amount of the unpaid overdeposit; that the bank's surety agreed to indemnify him; that the surety on the treasurer's bond paid the county the balance of the bank's debt for which the treasurer was liable, amounting to $3,189.61, and was thus subrogated to the treasurer's rights; that consequently the bank's surety will not be entitled to participate in dividends until the bank's debt for which the treasurer is liable has been paid from the assets of the insolvent bank.

"The position is untenable. The treasurer's surety cannot trace through subrogation to the treasurer a right to dividends superior to that of the bank's surety. The treasurer's compliance with the statute would have prevented the bank from incurring an indebtedness to the county in excess of $10,000. In that event the debt of the bank would have been paid in full. By making an overdeposit contrary to the letter of the law, the treasurer incurred a personal liability to the county which otherwise would have had no existence. Neither the treasurer nor his surety will be permitted to make

use of this wrongful act to establish a right to dividends superior to that of the bank's surety.

" . . . The bank's surety paid the entire debt for which the depository bond was given as security. If injury to the county would result from permitting the bank's surety to share the dividend, the county's loss would not grow out of the debt secured by the depository bond. Such a loss, if any, would be traceable to the illegal conduct of the treasurer in making deposits in excess of the penalty named in the depository bond. For this wrongful act on the part of the treasurer neither the bank's surety nor the county is in anywise responsible. If the treasurer had complied with the law, the principal's debt would be paid in full and the right of the bank's surety to subrogation would be un- assailable. In that event the ultimate loss of the bank's surety would be less than the maximum amount for which the depository bond was given. To deny or postpone subrogation because the treasurer, for whose wrongful act the bank's surety was not responsible, made overdeposits in violation of law, would extend the liability of the bank's surety beyond that created by the contract of suretyship. . . . "

We have so extensively quoted from the opinion in this case for the reason that it answers the arguments made on behalf of the appellant here and is, to our mind, conclusive in favor of the judgment of the lower court.

The other case referred to and relied on by appellant is *National Surety Co. v. Salt Lake County*, 5 Fed. (2nd series) 34, where a contrary result was arrived at. That case, however, does not support the appellant's position, the facts being similar but not the same as in the case at bar; for under the law of Utah, where the action arose, the county treasurer was not required to deposit funds in any bank, while by the law of this state the treasurer is compelled to keep the funds in a designated depository. *State ex rel. Port of Seattle v. Gaines, supra.* Furthermore, the Utah statute did not

compel the treasurer to take security from the depository. Moreover, the case was decided upon the theory that the treasurer was the owner of the money deposited and that he was a debtor of the county and a creditor of the bank. Under this theory, he having assigned the claim against the bank to his official bondsmen, they would have a preference right.

The judgment will be affirmed.

TOLMAN, C. J., ASKREN, BRIDGES, and PARKER, JJ., concur.