SCOTTS BLUFF COUNTY ET AL., APPELLEES, V. FIRST NATIONAL BANK OF GERING ET AL., APPELLANTS.

FILED MARCH 1, 1927. No. 24979.

1. **Banks and Banking:** COUNTY DEPOSITS: ACTION AGAINST SURETY. Where a county treasurer deposits public funds in a national bank in excess of 50 per cent. of the paid-up capital stock of said bank, contrary to section 6193, Comp. St. 1922, and the bank furnishes surety bonds in an amount equal to the total of such deposits, the entire deposits are within the protection of such surety bonds; and where all save one of said sureties discharge their full obligations, leaving deposits unpaid equal in amount to the face of the bond furnished by that one, an action may be enforced against that surety for the face of its bond, with interest from the date of its default.

2. ———: DEPOSITOR. When a bank gives to one of its depositors credit in his pass-book for a check drawn by another of its depositors, having on its books ample funds to pay the check, such credit is equivalent to a payment of the check so deposited; and the depositor of the check is entitled to be considered a depositor of the cash represented by the check even though, without knowledge or connivance on his part, it was not entered on the books of the bank and the money was not further actually transferred.

APPEAL from the district court for Scotts Bluff county: P. J. BARRON, JUDGE. *Affirmed.*

*Montgomery, Hall, Young & Johnsen,* for appellants.

*Mothersead & York, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, EBERLY and THOMPSON, JJ.

GOSS, C. J.

This is an action by the county of Scotts Bluff and its county treasurer, Schmidt, to recover from the First National Bank of Gering and from Globe Indemnity Company, hereinafter called the company, the sum of $5,000 and accrued interest on a certain bond for that sum executed by those defendants to secure deposits of county funds. Trial to the court resulted in a judgment against defendants for the full amount and they appealed.

The bank had a paid-up capital of $25,000. To secure deposits it had given surety bonds, including that of the company, for a total sum of $57,500. On December 31, 1923, during all of which day the bank was apparently open for business, the bank received from the treasurer for deposit a check of one Barton, drawn on the bank and with funds to Barton's credit sufficient to pay it, for $1,274.48. This deposit was entered on the treasurer's pass-book but, without any knowledge or connivance on his part, the deposit was not actually credited to his account on the books of the bank; the check was placed in an envelope, marked "County Treasurer," where later, when appointed, the receiver found it. The bank was taken charge of by the authorities and failed to open on January 2, 1924, the next business day. The county deposits of record on the books of the bank were $55,892.66, without including the Barton check of $1,274.48. The total of these two items is $57,167.14; but contractual interest at 3 per cent. on the daily balances increased the total deposits to $57,500 or more, if the Barton check be considered as a deposit. The other surety com-

panies paid the face of their bonds, or $52,500, and suit was brought against the company for the full amount of $5,000 on the theory that the county deposits totaled $57,500 or more when the bank closed.

The company argues, inasmuch as section 6193, Comp. St. 1922, prohibited the treasurer having on deposit with the bank a sum exceeding 50 per cent. of the $25,000 paid-up capital of the bank, that the company is liable with all the other bonding companies for only its *pro rata* share of $12,500. Questions akin to this have been before this court and a contrary principle has been followed. For examples: Notwithstanding section 6193, when a county treasurer deposits public funds in a state bank in excess of 50 per cent. of the paid-up capital stock of the bank it was held, in *State v. Peoples State Bank,* 111 Neb. 136, that the entire deposit was within the protection of the depositors' guaranty fund. Where a contract by a state bank to borrow money in excess of the debt limit authorized by its charter has been performed by the lending of money to such state bank, it will not be allowed to avoid the payment of its notes. *State v. Farmers State Bank,* 112 Neb. 597. And while the law prohibits a state bank from making loans in excess of a certain percentage of its paid-up capital stock and surplus, yet such loans are frequently made and their payment has always been enforced by this court when suit has been brought upon the notes. *State v. Peoples State Bank,* 111 Neb. 136. We adopt the same principle here. The bank could not defend a suit by the county to enforce its claim to deposits on the ground that they exceeded the statutory percentage of the bank's capital. It necessarily follows that the surety could not assert such a defense, for the engagement of the surety was to pay deposits of the county in the bank, if its principal failed to do so.

Was the Barton check a deposit? The evidence concerning it, in addition to what is heretofore stated, shows that, since the receiver took possession of the bank and found the check there, a claim for the full amount of the county de-

posits including the check has been filed, and that Barton treated the check as paid and filed a claim for the balance of his account on deposit when the bank closed. The receiver testified that it was his intention to issue to Barton a receiver's certificate for his balance less that check, thus treating the check as paid.

The receiver was right. He took over the bank with its rights and liabilities as they stood at the close of business. His legal position is that of the bank. While the bank was open and doing business, it received this check and credited it in the depositor's pass-book in the usual way. No duty rested upon the treasurer to see that the bank credited the deposit on its books, nor to see that the check was charged to Barton's account on its books. The transaction was the same as if the bank had cashed Barton's check and then had entered the cash deposit in the pass-book to the credit of the treasurer. The relation between the bank and the depositor thereupon became that of debtor and creditor. *Bryan v. First Nat. Bank*, 205 Pa. St. 7; *Oddie v. National City Bank*, 45 N. Y. 735; *Second Nat. Bank v. Gibboney*, 43 Ind. App. 492; *Wasson v. Lamb*, 120 Ind. 514; *Cohen v. First Nat. Bank*, 22 Ariz. 394; *American Exchange Nat. Bank v. Gregg*, 138 Ill. 596; *National Bank v. Burkhardt*, 100 U. S. 686; *American Nat. Bank v. Miller*, 229 U. S. 517.

We hold, therefore, that the Barton check was deposited and credited in legal significance, and that thus the balance on deposit to the credit of the treasurer was equal to or greater than the sum of the surety bonds; that a balance of $5,000 or more remained unpaid after the other companies paid; and that the company is legally bound to pay the face of its contract with interest from the date of its default.

On consideration of the application of appellees for a further allowance of attorney's fees in this court, we are of the opinion that the allowance in the trial court was sufficiently liberal to cover services in both courts, and so we

make no allowance here, but content ourselves with an affirmance of the case in all respects.

AFFIRMED.