Benjamin J. Schiff, Appellant, v. Continental National Bank and Trust Company of Chicago, Appellee.

Gen. No. 33,384.

Opinion filed January 2, 1930.

Moses, Kennedy, Stein & Bachrach, for appellant; Hirsch E. Soble and Arthur Magid, of counsel.

Mayer, Meyer, Austrian & Platt, for appellee; Abraham Meyer and Frederick Burnham, of counsel.

Mr. Justice Holdom delivered the opinion of the court.

In the municipal court defendant made a motion to strike the statement of claim from the files on the ground that it did not state a case which, as matter of law, entitled the plaintiff to recover. This motion was allowed and the statement of claim was stricken and a judgment of *nil capiat* and for costs entered against plaintiff, and he brings the record here by appeal for our review.

The action is to recover money alleged to have been received by defendant to and for the use of plaintiff. In brief the claim made against defendant by plaintiff, as set forth in his statement of claim, is *inter alia* that on April 11, 1919, the plaintiff made, executed and delivered to defendant in its then known name a guaranty in which he and one Moses Schiff, jointly and severally, guaranteed the full and prompt payment to defendant at maturity and at all times thereafter, of any and all indebtedness which the Vitanola Talking Machine Company then or thereafter might owe defendant, and the full and prompt payment of every balance and part of any such indebtedness to the extent of $150,000; that the Vitanola Company thereafter became insolvent owing defendant $240,814.46; that the plaintiff, as guarantor, to secure an extension of time for the payment of his guaranty, made an arrangement with a creditors' committee whereby he put that committee in control of enough of his own securities to insure the performance of his guaranty. The Vitanola Company, through its creditors' committee, subsequently paid certain dividends on defendant's claim of $240,814.46, amounting in the aggregate to $117,999.10. Moses Schiff, joint guarantor with plaintiff, also paid defendant $15,371.07. Defendant needed $120,716.55 plus interest, to liquidate the balance of the Vitanola's indebtedness to it. That amount was realized by the creditors' committee selling some of the securities de-

posited with it by plaintiff, and with the proceeds paying defendant.

The dispute is environed within the question whether plaintiff is entitled to a deduction from the amount of his guaranty of a credit consisting of that proportion of the dividends received by defendant, which the amount of plaintiff's limit of liability of $150,000 bears to defendant's entire claim of $240,814.46.

The question presented by the issues before us is, whether plaintiff is, as he contends, entitled to recover from defendant an amount which will be the difference between that proportion of the dividends received by defendant which the amount of plaintiff's limit of liability under his guaranty of $150,000 bears to defendant's entire claim of $240,814.46, on the theory that the excess of payment was on the unsecured portion of defendant's debt, which contention defendant meets by insisting that there was no part of the debt unsecured, but that plaintiff's guaranty was of the whole debt of the Vitanola Company with a limitation on the liability of plaintiff under his guaranty to $150,000.

The rights of the parties are confined to a construction in law of the purport and effect of the guaranty of plaintiff to defendant, whether it is as contended by defendant, a guaranty of the whole debt of the Vitanola Company, or simply a guaranty of $150,000 of such debt.

The guaranty of plaintiff in suit was dated April 11, 1919, and *inter alia* provided that:

"For value received and to enable Vitanola Talking Machine Co. . . . to obtain credit, from time to time, of the Continental and Commercial National Bank of Chicago, we hereby request said Bank to extend from time to time to said debtor such credit as said Bank may deem proper, and we hereby jointly and severally guarantee the full and prompt payment to said Bank at maturity and at all times thereafter,

and also at the time hereinafter provided, of any and all indebtedness, liabilities and obligations of every nature and kind of said debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of One hundred fifty thousand dollars with interest . . . from maturity until paid; . . . And the liability hereunder shall in no wise be affected or impaired by any acceptance by said Bank of any security for any of said indebtedness, liabilities and obligations, or by any disposition of, or failure, neglect or omission on the part of said Bank to realize upon any of said indebtedness, liabilities and obligations, or upon any collateral or security for any or all of said indebtedness, liabilities and obligations, or by any application of payments or credits thereon. Said Bank shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on said indebtedness, liabilities and obligations, or any part of them. . . . The granting of credit from time to time by said Bank to said debtor in excess of the amount of this guaranty and without notice to the undersigned is hereby also authorized and shall in no way affect or impair this guaranty. . . . This guaranty shall be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect until written notice of its discontinuance shall be actually received by said Bank, and also until any and all of said indebtedness, liabilities and obligations created before receiving such notice of discontinuance shall be fully paid.''

On March 22, 1921, the Vitanola Company was averred to be indebted to defendant in the sum of $240,814.46; that between April 11, 1919 and the above last mentioned date, the Vitanola Company became insolvent and thereafter so remained; that plaintiff on

March 22, 1921, entered into a trust agreement with four of his creditors, defendant being one of them, for the purpose of securing an extension of the time of payment of his debts to them. Three trustees were named in the agreement, one of whom was Harvey C. Vernon, an assistant cashier of the defendant; that in said agreement it is recited that the liability of plaintiff to defendant under his guaranty has accrued, and that defendant has the right to insist upon payment, and further recites that plaintiff transferred to the trustees for the benefit of his creditors, including defendant, pro rata in proportion to their respective claims against plaintiff, all his right, title, etc. in and to certain securities and real estate specified therein, and that the reasonable value thereof was $300,000. That the trustees were given the right to collect the income of the property so conveyed, and to sell the same at any time for such price and terms as they saw fit and with the proceeds to pay the indebtedness for which the same was held as security, and that in the event plaintiff should liquidate the indebtedness for which such property was held as security, then to reconvey the trust property to plaintiff.

On April 1, 1922, the Vitanola Company and a majority of its stockholders entered into a creditors' agreement with Harvey C. Vernon and two others therein designated as a "Creditors' Committee." It is also averred that defendant was one of the creditors of the company assenting to such agreement; that in and by such last mentioned agreement the creditors assenting thereto did extend the time of payment of the indebtedness of the Vitanola Company to such time and upon such terms as the creditors' committee might in its judgment from time to time deem necessary to accomplish the purposes of the agreement; that by said agreement a majority of the stockholders of the Vitanola Company deposited with the creditors' committee their certificates of stock in the Vitanola Company, in-

dorsed in blank, and the committee was given the management of the business and assets of its comapny with power to continue the same in whole or in part, or at any time in its discretion to liquidate the same and its affairs in its sole and exclusive judgment, and with further power from time to time to make pro rata distribution out of the company's treasury of such funds as may accumulate therein realized from its business or assets; that the committee thereafter assumed control of the company and for several years operated it and subsequently liquidated its affairs and business and concluded the same about September 7, 1927; that between April 1, 1922 and September 7, 1927, the creditors' committee made pro rata distribution of cash dividends to the creditors assenting to the aforesaid creditors' agreement, out of the company's treasury; that about January 29, 1924, August 14, 1926, September 16, 1926, November 17, 1926 and September 7, 1927, the creditors' committee caused the Vitanola Company to pay to its creditors, including defendant, dividends of 12 per cent, three of 10 per cent and one of 7 per cent on their respective claims; that payments were by check on which was indorsed, ''To apply on account of principal of our indebtedness to you;'' that defendant cashed its checks without objection and that the same totaled $117,999.10; that interest payments were likewise made from time to time by the committee; that plaintiff at the time was a creditor of the Vitanola Company in the sum of $57,449.96; that under the terms of the creditors' agreement plaintiff agreed that any dividend which was authorized by the creditors' committee to be paid on account of his claim should be distributed among certain creditors, including defendant; that the distributive share of plaintiff's dividend of $15,371.07 was paid to defendant September 7, 1927; that prior to September 10, 1927, plaintiff paid in full to all of his creditors named in the trust agreement except defendant, and received releases from them therefor; that

Harvey C. Vernon, surviving trustee, was notified in writing September 10, 1927, that the aforesaid indebtedness was paid in full; that plaintiff admits an indebtedness to defendant on September 10, 1927, of $84,844.50; that on said last mentioned date plaintiff tendered to defendant said last mentioned sum in legal tender, which defendant refused to accept, and demanded of plaintiff the sum of $120,716.55, which defendant claimed was the balance due it under plaintiff's guaranty agreement.

Plaintiff avers that on or about September 13, 1927, defendant, without his consent or authority, wrongfully and illegally directed trustee Vernon to sell sufficient of the securities, deposited with Vernon under the foregoing trust agreement, to realize the sum of $120,716.55; that on said date trustee Vernon, without the consent of plaintiff and contrary to his direction, sold sufficient of said securities to realize thereupon the aforesaid $120,716.55, and said trustee did thereupon on said date wrongfully pay said sum to defendant, and defendant did wrongfully receive the same, and plaintiff claims that by reason of the foregoing recited premises defendant is indebted to him in the sum of $35,872.05 and for money had and received by defendant for his use.

It is our construction of the terms of the guaranty contract in the record between plaintiff and defendant, that it is a guaranty of the whole debt of the Vitanola Company to defendant with a limitation of $150,000, and following this, as a matter of law, plaintiff is not entitled to share in any dividend payable from the estate of the Vitanola Company, an insolvent debtor, until after all of the indebtedness of the insolvent debtor, incurred under the terms of plaintiff's guaranty, has been paid and satisfied in full.

We quote from plaintiff's brief in which it is quite correctly stated that, ''The important inquiry . . . is: Is the guaranty one of the whole indebtedness owing

from the debtor to the creditor, with a limitation only on the amount of the liability of the guarantor; or is it one of a limited part of said indebtedness? If the guaranty is one of the whole indebtedness, then the creditor may retain all the dividends and hold the guarantor for the residue of the debt up to the amount of the guaranty. If the guaranty is of a part of the indebtedness, then the guarantor is entitled to a rateable deduction from the sum covered by the guaranty.''

In accord with this argument there is but little cause for disagreement, for adjusting this argument to the instant case the question for our decision is, does the guaranty guarantee the whole of the indebtedness or not. In the preceding paragraph we have reached the conclusion that the whole indebtedness was embraced within the guaranty. While the authorities are not exactly harmonious on the point we will refer to those which we feel sustain the conclusion to which we have arrived, as hereinabove announced.

It may be conceded that the rule of *strictissimi juris* is the canon for construction of the liability of a guarantor, and that in a sense a guarantor is the favorite of the law. Such is simply to be borne in mind by the court in construing the liability of such guarantor and in so doing to accord him the benefit of any doubts which may arise from the language of the contract and not to extend by implication, construction or presumption beyond the precise terms of the contract. In our construction we have adhered strictly to these legal principles.

In *Buffalo German Ins. Co. v. Title Guaranty & Trust Co.*, 99 N. Y. S. 883, the court *inter alia* said:

''The question appears to be novel in our jurisdiction, although in the English courts it has arisen upon engagements somewhat similar to that contained in this bond, and has been much discussed. The earliest adjudged case is *Ex parte Rushforth,* 10 Vesey, 409 (1805), and the numerous subsequent cases are re-

viewed in *Ellis v. Emmanuel,* 1 Ex. D. (L. R. 1876) 157. The English cases recognize this somewhat subtle distinction, depending upon the true nature of the surety's engagement, viz., Was the guaranty of the whole debt with a limitation on the liability of the surety? If so, the principal may retain all the dividends, and hold the surety for the residue of the debt up to the extent of the bond.''

*Dumont v. Fry,* 14 Fed. 293, in which the leading English and American cases are reviewed, all of which are in point, sustains the conclusion to which we have arrived in the instant case.

Lord Eldon in *Ex parte Rushforth,* 10 Vesey, Jr. 409, stated that:

"The rule certainly has been, that, where a man, engaged for the whole of a debt, pays only a part, he has no equity to stand in the place of the person paid.''

The plaintiff in the case at bar did not, according to the statement of claim, pay the full amount of the debt which he guaranteed. Consequently he is not entitled to a pro rata share in dividends declared out of the insolvent estate of the Vitanola Company. We agree with counsel for defendant that *Ellis v. Emmanuel,* 34 Law Times Rep. 553, (in which *Ex parte Rushforth, supra,* and numerous subsequent cases are reviewed) cited in support of plaintiff's contention, is in fact favorable to the cause of defendant.

In *Cole v. Myers,* 100 Neb. 480, the English cases are reviewed, including *Ellis v. Emmanuel, supra.*

In *Jenkins v. National Surety Co.,* 277 U. S. 258, that court in its opinion adhered to the English cases and *inter alia* held that even on the theory of indemnity, the surety company was not entitled to share pro rata in the dividends of the insolvent bank until the receiver had been paid in full.

The Canadian case of *Mather v. Bank of Ottawa,* 51 Dom. Law Rep. 353, is strikingly analogous to the

instant case and similar in every essential particular. In the *Mather* case the guaranty reads, *inter alia,*

"This is a continuing guaranty and shall cover the whole indebtedness to the amount aforesaid, or the ultimate balance from time to time due thereon to the amount aforesaid and shall cover any number of transactions up to the time of demand of payment thereof upon us on this guaranty. . . . "

In the case at bar and in the *Mather* case, *supra,* the liability was limited "to the extent of $150,000." The only difference in the two guaranties is, in the Canadian case the words "ultimate balance" are used, and in the Schiff guaranty the words used are "every balance or part thereof," which we think by interpretive construction mean the same.

The court stated clearly the contentions of the parties in the *Mather* case in the following language:

"The contention of the respondent is that the extent of the liability of the guarantors is to be determined upon a consideration of the terms of the bond alone; and that, according to its true construction, they are liable for the ultimate balance owing by the company as a direct debt to the respondent, the amount they may be called upon to pay being limited to $150,000; and the contention of the appellants is two-fold: first, that according to the true construction of the bond the guarantee is one for a part of the company's indebtedness ($150,000). . . . "

The court then proceeded to dispose of the question of what was the meaning of the guaranty, and said:

"I turn now to the consideration of the terms of the bond. In my view, it is not, as Mr. Anglin contended, a guarantee of $150,000 of the indebtedness of the company, but a guarantee of the whole of the indebtedness, the amount which the guarantors were to be called on to pay being limited to $150,000.

"If the provision that the subscribers to the bond, guarantee 'the repayment of the said advances, dis-

counts, loans, payments, overdrafts, and other indebtedness, to the amount of $150,000, together with all interest, costs, charges, and expenses incidental thereto,' is read without reference to the remainder of the instrument, it may be that Mr. Anglin's contention that the bond is to be construed as applicable only to $150,000 of the company's indebtedness to the respondent is well-founded; but, when the remainder of the bond is read, it is, I think, not so, for it is provided that 'the guarantors shall be liable for the ultimate balance remaining unpaid after all moneys which may have been received from other sources shall have been applied in reduction of the indebtedness which shall be owing from the Ontario and Manitoba Flour Mills to the said bank'; which indicates plainly, I think, that the suretyship was to be in respect of the whole debt of the company, with a limitation of the liability of the guarantors to $150,000.

"However, if it be assumed that the guaranty is applicable only to $150,000 of the indebtedness, it by no means follows that the payment of that sum by the company on account of its indebtedness, it still remaining indebted in more that that sum, discharges the guarantors. There is nothing in the cases cited by Mr. Anglin which supports such a view. *Ellis v. Emmanuel* (1876) 1 Ex. D. 157, is the leading case on the subject, but there is nothing in it or in the cases referred to by Blackburn, J., who delivered the judgment, to support the view that in the case of such a guaranty, where it is a continuing one, the surety's liability is discharged *pro tanto* by payments made by the principal debtor on account of his indebtedness.

"The importance to a surety of his guaranty being treated as applicable to a part only of the principal debtor's indebtedness is that, if he pays that portion, he has in respect of it all the rights of a creditor, and therefore, if the principal debtor becomes bankrupt, is entitled to the dividends on so much of the indebted-

ness, provable against the bankrupt's estate, and, if the creditor holds other securities for his debt, to the benefit of a proportionate part of them.

"It is not, as I read the cases, payment by the principal debtor, but payment by the surety that gives him these rights; and, as I understand the law, so long as any indebtedness exists, the surety is liable to make good any part of it not exceeding the amount which he has guaranteed. It would, I think, be a strange result that where a surety gives a continuing guaranty for a stated amount of the principal's indebtedness, he is entitled to say, whenever the principal pays an equal amount on account of his indebtedness, leaving, however, as much still owing, the surety is discharged, or that all payments made by the debtor on account of his indebtedness on a running account discharges *pro tanto* the surety; and that is not, in my opinion, the law."

All of the foregoing reasons in the *Mather* case are forcefully applicable to the situation in the instant case and in our judgment, together with the other cases cited to a like effect, conclusive of the rights of the parties in this appeal.

In consonance with the cases herein cited the plaintiff in its statement of claim in the municipal court did not state a cause of action entitling him to recover in the action, and that as a guarantor he was not entitled to share in any dividends paid by the insolvent debtor of the defendant until defendant had been paid in full. Therefore the judgment in this appeal is affirmed.

*Affirmed.*

WILSON, P. J., and RYNER, J., concur,