The Aetna Casualty and Surety Company of Hartford, Connecticut, Appellant, v. Village of Maywood et al., Appellees.

Gen. No. 34,937.

Opinion filed June 22, 1931.

HAIGHT, ADCOCK & BANNING, for appellant; EDMUND D. ADCOCK, of counsel.

MOSES, KENNEDY, STEIN & BACHRACH, for certain appellee; HIRSCH E. SOBLE, HERBERT H. KENNÉDY and ARTHUR MAGID, of counsel. ROY MASSENA and JACOB E. DITTUS, for certain other appellees; DONALD N. SCHAFFER, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by complainant from an order which sustained demurrers to its amended bill and (complainant having elected to stand by) dismissed the same for want of equity. The case grew out of the failure of the Peoples State Bank of Maywood, one of the defendants, which was closed by the direction of the Auditor of Public Accounts on February 8, 1930, and which is insolvent. When the bank failed the Village had on deposit with it approximately $63,000.

Complainant had prior thereto executed and delivered to the Village two depositary bonds in which the bank was principal and the complainant surety. The penalties of the bonds were for $30,000. The condition in each of these bonds was that the bank would keep, account for and pay over the money on deposit when demanded by the City of Maywood.

Certain ordinances of the Village in force when these bonds were given named the defendant bank with three other banks as depositary of the village funds. These ordinances provided that the depositary bank before receiving deposits should file with the village clerk a bond with sureties as the board of trustees of the village might direct and approve; that the treasurer of said village "is hereby further required not to deposit or to have deposited with either of said banks at any time, moneys or funds belonging to said Village in excess of the penal sum of such bond of said bank on file at such time." Before the failure of the defendant bank Grace E. Schroeder was the village treasurer and had, pursuant to the provisions of these ordinances, executed and delivered a bond in the penal sum of $75,000, in which defendant Great American Indemnity Company was surety. The condition of this bond was that she would "faithfully perform such duties as may be imposed on her by law and shall honestly account for all money that may come into her hands in her official capacity." The Village had no other depositary or indemnity bonds except those above described.

The bill avers that Schroeder failed to perform her duties as village treasurer by making deposits in the Peoples State Bank in excess of the aggregate penal sum of the depositary bonds furnished by the bank, and that the Great American Indemnity Company is liable under her bond for all such money deposited; that the excess sums were wrongfully deposited by the

treasurer and wrongfully received by the bank and constitute trust funds, for which the Village is entitled to a preferred claim against the assets of the bank; that the total amount of deposits in excess of $30,000 was wrongfully mingled with other funds of the bank; that the total amount of the funds of the bank and of the trust fund, including other trust funds of the bank similarly mingled, was not depleted or dissipated below an amount equal to the excess deposits of the Village in the bank and said other trust funds; that the general assets of the bank at the time it became defunct as aforesaid were increased and were benefited to the extent of such excess deposits.

The bill avers on information and belief that the creditors of the bank through suits which have been brought, one of which is for the purpose of establishing a liability of the stockholders, will receive dividends or payments upon their claims from the assets of the bank; that these will amount to approximately 50 per cent of the total amount of the respective claims; that the Village will not make any attempt to enforce any claim against the treasurer or her surety; that it will not attempt to enforce any claim it may have that deposits illegally made in the bank are trust funds for which the Village is entitled to a preferred claim; that the attorney for the Village announced for it the intention to collect $30,000 from the complainant under the depositary bonds and to collect dividends from the assets of the bank in the circuit court proceedings and thereby collect substantially its entire claim without any recourse whatsoever to the bond of the treasurer and her surety and without asserting any claim that the funds illegally deposited were trust funds and therefore entitled to a preference over the general creditors of the bank.

The bill also avers that complainant has offered to pay the Village $30,000, being the aggregate penalties

of the depositary bonds, ''upon the understanding, to be properly evidenced in writing, that the complainant was or shall be subrogated to the right of the Village pro rata to the extent of such payment, or upon the enforcement by the said Village of Maywood of its rights against the said Grace E. Schroeder and the Great American Indemnity Company, her surety, or upon enforcing its right to have the illegal deposit as aforesaid adjudged a trust fund entitled to a preference''; that the Village has refused to accept this offer, to assert its rights against the treasurer and her surety, and to assert its rights to have the illegal deposit adjudged a trust fund entitled to a preference.

The bill further avers that the ordinances of the Village were a part of the transactions in connection with the making, execution and delivery of the depositary bonds; that complainant executed the same by reason of and in reliance upon the ordinances of the Village and upon the observance of the same by the Village treasurer with reference to the amounts of the deposits to be made in the defendant bank; that complainant relied, and was entitled to rely, upon the principal and the surety of the bonds performing their duties and obligations thereunder to pay to the Village the amount of any excess deposits over the penalties of the depositary bonds of complainant in the event of the failure of the bank.

The bill avers that in the event the Village is able to carry out its intention as expressed, complainant may be without remedy to participate in any dividends in the proceedings; that the Village may participate to the full extent of its claim amounting to $63,000; that by collecting approximately $31,500, which with the collection of $30,000 from complainant, the Village would be made approximately whole, and the village treasurer and her surety would not be compelled to contribute their just share arising by virtue of the

failure of the village treasurer to observe and fulfill the terms of the village ordinances; that this would be unconscionable.

The bill also avers that the Village threatens immediate suits at law upon the bonds; that complainant would not have an adequate defense thereto and is therefore entitled to an injunction and to a decree of the court compelling the treasurer and her surety to pay to the Village the excess of the deposits in the bank over and above the penalties of the depositary bonds of complainant, or to an injunction against the prosecution of any suits at law by the Village against complainant until the Village has established the excess deposits as a preferred claim in the proceedings pending in the circuit court or until the Village has collected on the official bond of the treasurer; that complainant offers to pay the amount of the penalties of the bonds when a decree is entered directing the village treasurer and her surety to pay the amount of the excess deposits over and above the penalties of the two depositary bonds of complainant, and complainant consents that a decree may be entered directing it to pay to the Village the amount of the penalties of its depositary bonds or such amount as the court may determine by its decree it should pay when such decree is entered against the village treasurer and her surety; that the decree should provide that complainant should be subrogated pro rata to the amount of its payments with the treasurer and her surety and to the rights of the Village against the Peoples State Bank of Maywood in the proceedings in the circuit court to wind up the affairs of said bank and to enforce stockholders' liability. Complainant avers that it does not have a full, complete and adequate remedy at law and prays for relief according to the allegations of the bill.

The question to be determined is whether there is any equity in the bill, and in determining that question the truth of all the allegations well pleaded must be assumed. Complainant says that there is equity in the bill; that the rights of the parties became fixed on February 8, 1930, and that "complainant was then entitled, upon payment to the Village of an amount of money equal to the penalties of the depositary bonds, to be subrogated *pro tanto* to the rights of the Village against the bank in the winding-up proceedings, and also in the stockholders' suit to enforce stockholders' liability, and to have the Village recognize this right"; that the failure of the. Village to accept the offer of complainant to pay upon the conditions set forth entitled complainant to contribution against the village treasurer and her surety, Great American Indemnity Company; that if the relief asked is not granted complainant will be placed at the mercy, fancy or whim of the Village to prefer the village treasurer and her surety as against complainant; that the effect would be to compel complainant to pay the entire amount of deposit claim, although it is liable for less than half of it, and then to compel by proper proceedings subrogation to the rights of the Village against the bank in the winding up and stockholder liability suits, and then to proceed against the village treasurer and her surety for contribution, all of which would require numerous suits in equity or at law.

Complainant claims the right to be subrogated to the rights of the Village of Maywood upon the bond given by its treasurer, and its bill proceeds upon the theory that this may be demanded as a right upon the offer to make the Village whole with respect to its loss but only to the amount of the penalty named in its bond, although the facts averred show that if there is any right to subrogation it would be a legal rather than a conventional subrogation. The distinc-

tion between subrogation which is legal and that which is conventional was pointed out in *Loeb v. Fleming,* 15 Ill. App. 503, where this court said:

"It is well settled that a surety can neither at law nor in equity call for an assignment of the claim of the creditor against his principal, or be clothed, by the mere operation of law, and upon principles of equity, with the rights of an assignee of such claim, unless he has paid the entire debt of the creditor. A *pro tanto* assignment will not be allowed. *Gannett v. Blodgett,* 39 New Hamp. 150; *Swan v. Patterson,* 7 Md. 164; *Commonwealth, etc. v. Ches. & Ohio Canal Co.,* 32 id. 501; *Magee v. Leggett,* 48 Miss. 139; *Vest v. Voss et al.,* 74 Ind. 565; *Harlan v. Sweeny,* 1 Lea (Tenn.) 682; 1 Lead. Cas. in Eq., 4th Am. Ed. 152; Sheldon on Sub., sec. 127; Brandt on Suretyship, sec. 266, and cases in notes."

In that opinion this court also said in substance that a conventional as distinguished from a legal subrogation was sometimes recognized by the courts; that it is a subrogation arising from an express agreement with the creditor, in which case it was no objection that it extended only to a part of the mortgage or other security. See also the note in American and English Anno. Cases, vol. 6, p. 204, where the cases from different jurisdictions are collected.

In 25 Ruling Case Law 1318, after statement of the general rule that a person is not entitled to subrogation until the claim of the creditor is paid in full and that a *pro tanto* assignment or subrogation will not be allowed, it is said:

"In several cases the rule has been applied where a bank having public funds on deposit has become insolvent and the surety on a bond given to secure the deposits has paid the loss to the extent of his liability on the bond, the amount paid, however, being less than the total claim against the bank. In such a case

the surety is not entitled to share in the dividends paid by the insolvent bank to its creditors for an amount proportionate to that which the payment made by him bears to the total claim due by the bank to the principal. There is authority for the rule that where the right of subrogation is the result of an express agreement, a partial payment may be considered as effecting a *pro tanto* assignment of the creditor's security; but where the claim to a *pro tanto* subrogation is based on a contract, before a court will permit subrogation that would be to the detriment of the obligee the contract should be so certain as to admit of no doubt on that question.''

The reason for the rule seems to be that the bond is intended to secure the whole debt, and it would obviously be inequitable to compel an assignment by the creditor when only a portion of his debt has been in fact paid. There is no limitation in the bond here in question as to the obligation to repay the money deposited, although the amount which might be recovered from the surety is limited to the penalty of the bonds—in this case $30,000. Such has been the construction put upon similar bonds in *Schiff v. Continental Nat. Bank & Trust Co.,* 255 Ill. App. 333, and the rule has also been applied in other jurisdictions. *Knaffl v. Knoxville Banking & Trust Co.,* 133 Tenn. 655, 182 S. W. 232; *Commissioner of Banking v. Chelsea Savings Bank,* 161 Mich. 691, 125 N. W. 424. Complainant, however, relies on *Cole v. Myers,* 100 Neb. 480, 160 N. W. 894; *Minshull v. American Surety Co. of New York,* 141 Wash. 440, 252 Pac. 147; *National Surety Co. v. Salt Lake County,* 5 F. (2d) 34, (C. C. A. 8); *City of Ortonville v. Hahn,* 181 Minn. 271, 232 N. W. 320, and *United States Fidelity & Guaranty Co. v. McClintock,* 26 F. (2d) 944, as authorities for *pro tanto* subrogation under circumstances such as are stated in the bill.

*Cole v. Myers,* as the opinion in that case states, is based on the rule as announced in *Ex parte Rushforth,* 10 Ves., Jr. 409, followed in *Gray v. Seckham,* L. R. 7 Ch. (Eng.) 680, and the opinion says that the doctrine is "firmly established" as indicated by a review of the cases in *Ellis v. Emmanuel,* 1 Exch. Div. (Eng.) 157. This opinion further states that *Ex parte Rushforth,* above cited, was criticized in *Knaffl v. Knoxville Banking & Trust Co.,* 133 Tenn. 655. In the *Cole* case the statute of Nebraska provided in substance (as the ordinances of the Village here provide) that the treasurer should not have on deposit in any bank more than the maximum amount of the bond given by any particular bank, and the Nebraska court held that the surety for the bank would be entitled to participate in the dividends of the insolvent bank before the creditors were paid from the assets; that the treasurer's surety could not trace through subrogation to the treasurer a right to dividends superior to that of the surety for the bank. The opinion states:

"The treasurer's compliance with the statute would have prevented the bank from incurring an indebtedness to the county in excess of $10,000. In that event the debt of the bank would have been paid in full. By making an over-deposit contrary to the letter of the law, the treasurer incurred a personal liability to the county which otherwise would have had no existence. Neither the treasurer nor his surety will be permitted to make use of this wrongful act to establish a right to dividends superior to that of the bank's surety." The court further states that the rule that there could be no subrogation until the principal who was indemnified had been paid in full did not apply to such a state of facts.

In *Minshull v. American Surety Co. of New York,* 141 Wash. 440, 252 Pac. 147, the opinion of the court states that "except for the amount involved" *Cole v.*

*Myers* "is exactly the same in its facts as is the instant case, and the question for determination is the precise one which is before us." The opinion distinguishes the case of *National Surety Co. v. Salt Lake County*, 5 F. (2d) 34, saying that there "the statute did not compel the treasurer to take security from the depositary."

. In *City of Ortonville v. Hahn*, 181 Minn. 271, 232 N. W. 320, the court states the general rule that the doctrine of subrogation cannot operate until the creditor has been paid in full, and says: "Literally appellants state the rule correctly," but that the fallacy of appellants' claim was in the fact that they attempted to make plaintiff's claim for an excess deposit a portion of the claim which plaintiff held against the depositary sureties, which it was not. There, too, the court relies on *Cole v. Myers* and *Minshull v. American Surety Co*. Neither the *Knaffl* case nor other numerous authorities to the contrary seem to have been called to the attention of the court. Moreover, in *Scotts Bluff County v. First Nat. Bank of Gering*, 115 Neb. 273, 212 N. W. 617, on the authorities of *State ex rel. Davis v. People's State Bank of Anselmo*, 111 Neb. 126, 196 N. W. 912, and *State ex rel. Davis v. Farmers' State Bank of Winside*, 112 Neb. 597, 200 N. W. 173, it was held that a surety could not be permitted to interpose such a defense. Neither the *Myers* case nor the other authorities we have mentioned appear to have been cited or called to the attention of the court.

In *People of Sioux County v. National Surety Co.*, 276 U. S. 238, the Supreme Court of the United States considered a case begun in the state court of Nebraska, but transferred to the federal court for diversity of citizenship, and it was there urged that since the statute of the State forbade the deposit of the county funds by the county treasurer in excess of fifty per

cent of the authorized capital stock of the bank, the sureties were not liable for the excess deposits. The trial court, however, gave judgment for the full amount, and the court of appeals reversed that judgment. The opinion of the Supreme Court states that the court of appeals relied on *Cole v. Myers* and other cases, and said:

"The correctness of this interpretation of the Nebraska decision is questioned here, but all doubts on that point have been set at rest by a later decision of the state court. In *Scotts Bluff County v. First Nat. Bank of Gering,* 115 Neb. 273, decided since the entry of judgment below, the Supreme Court of Nebraska held that the statute does not have the effect asserted, and that within the amount of the bond a county may recover from the surety the full amount of the deposit even though it exceed fifty per cent of the authorized capital of the depositary.

"We accept this construction of the statute and accordingly set aside the conflicting interpretation of the court below, even though it antedated the determination by the State court."

The weight of authorities is clearly to the effect that the provisions of the ordinances will not be incorporated into the bonds and that the same formed no part of the contract between the Village of Maywood and the complainant. *Estate of Ramsay v. People,* 197 Ill. 572; *Gregg v. Hinkle,* 29 N. M. 576, 224 Pac. 1025; *City of Cheyenne v. Maryland Casualty Co.,* 13 F. (2d) 401 (D. C. Wyo.); *Carson v. DeWitt County* (Tex. Civ. App.), 23 S. W. (2d) 411; *State v. Pederson,* 135 Wis. 31, 114 N. W. 828; *People of Sioux County v. National Surety Co.,* 276 U. S. 238. These authorities hold that there cannot be subrogation *pro tanto* under such circumstances. *Schiff v. Continental Nat. Bank & Trust Co.,* 255 Ill. App. 333; *United States v. National Surety Co.,* 254 U. S. 73; *Jenkins v. Na-*

*tional Surety Co.,* 277 U. S. 258; *Hanlon v. Union Bank of Medina,* 247 N. Y. 389; *Commissioner of Banking v. Chelsea Savings Bank,* 161 Mich. 691, are a few of the numerous authorities that might be cited to this point. Indeed, the authorities to the contrary are all based upon the reasoning set forth by the Lord Chancellor in *Ex parte Rushforth,* where he said:

"Take the case of two sureties, each for the separate sum of 10,000 l.; each, paying the principal creditor, would be entitled to stand in his place for the sum paid. It would be very strong to hold that, as they have taken but one surety, he shall be in a worse situation. I think, the bankers are not entitled in equity to say, as against the surety, that their demand is more than 10,000 l., the amount of the bond he has given; upon which he would be *prima facie* entitled to stand in their place; as to the residue of their debt, they ought to be considered, if I may so express it, as their own insurers. He is entitled to stand in their place; but not for the whole sum of 10,000 l.; for the money produced by the sale of the estate must be considered as received by the bankers. He will, therefore, be entitled to stand in their place for the difference."

In *Knaffl v. Knoxville Banking & Trust Co.,* 133 Tenn. 655, after quoting the above in part, the court said:

"We think there is fault in the reasoning of this case, and that it is not in harmony with the principles of equity governing the doctrine of subrogation. The condition of the bond was to pay such sums as would be advanced to the principal without limiting the amount which should be advanced. The fault in the reasoning is readily seen when it is considered that the obligee may first apply all that the principal obligor can pay, and then resort to the bond for any amount left unpaid not exceeding the amount of the penalty; for it is the final amount left unpaid by the

principal which is intended to be secured by the surety.''

This reasoning seems to us conclusive. We think that all the cases upon which complainant here relies come to a wrong conclusion by assuming the same false premise. The loss for which complainant here will be liable is the net loss sustained by the Village of Maywood after it has received all the dividends it may be entitled to receive from the insolvent bank. The amount for which the surety company should answer was not limited in the bond except to the full extent of the amount deposited, although the Village of course would be limited in its recovery necessarily to the penalty named in the bonds. That was the only limitation.

As to the assertion that the excess deposits in the bank constitute a trust fund for the benefit of the Village of Maywood and that the same would be a preferred claim to which complainant has a right to be subrogated, *Maryland Casualty Co. v. Fouts,* 11 F. (2d) 71, gives a complete negative answer. Neither can the bill be sustained as one for contribution between complainant and defendant surety company. The bonds severally executed by these surety companies are not for the same principal. This fact alone would prevent a recovery on that theory. Of the many cases which might be cited to this point, we cite a few. *Golsen v. Brand,* 75 Ill. 148; *Conover v. Hill,* 76 Ill. 342; *Wanack v. Michels,* 215 Ill. 87; *Southern Surety Co. v. Tessum,* 178 Minn. 495, 228 N. W. 326; *Southern Surety Co. v. Nichols,* 239 Mich. 158, 214 N. W. 137. A further reason that the bill cannot be maintained upon that theory is that the sureties are not in any respect by reason of the execution and delivery of the respective bonds, sharers of a common burden or liability. *Trego v. Estate of Cunningham,* 267 Ill. 367; *Weger v. Robinson Nash*

*Motor Co.,* 340 Ill. 81; 50 Corpus Juris 278–9. Moreover, complainant has no such prevailing equities as would require a court of chancery to compel defendant surety company to contribute to its loss. The real party at fault primarily is the bank, which failed to pay back the money deposited with it, and complainant is the surety for the bank and has no better equity than has the bank. As between the bank which failed to repay money deposited with it and a village treasurer who made the mistake of trusting the bank when technically she ought not to have done so, there can be no question in a court of conscience as to which would have the superior equities, and without a superior equity complainant cannot maintain its bill. The authorities are all to that effect. A discussion of them would lengthen this opinion unduly.

For the reasons already indicated the decree is affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.