[No. 15483.   Department Two.   December 30, 1919.]

THE STATE OF WASHINGTON, *on the Relation of the Port of Seattle, Appellant,* v. WM. A. GAINES, *as Treasurer of King County, Respondent.*[1]

COUNTIES (31, 70)—GENERAL FUNDS—DEPOSIT BY COUNTY TREAS-URER—INTEREST ON PUBLIC MONEYS.   Under Rem. Code, § 5072, re-quiring county treasurers to deposit all public funds in a county depositary, and § 5074, requiring interest received thereon to be credited to the county expense fund, the interest on funds of a port district belongs to the county, the county treasurer being required by Laws of 1917, p. 503, to handle port district funds without any compensation to the county other than the interest received thereon.

SAME.   Rem. Code, § 5075, referring to the quarterly settlements for "any county moneys" deposited by county treasurers, was not intended to restrict the right of county treasurers to deposit strictly county funds, in view of all the other provisions of the act requiring the deposit of all public funds.

SAME.   The legislature, in providing by Laws of 1917, p. 503, that all port district funds shall be paid to the county treasurer, must have had in mind the depositary act, Rem. Code, § 5072, requiring the county treasurer to deposit all public moneys in his hands in a depositary bank.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 14, 1919, upon sustaining a demurrer to the complaint, dismissing an action for a writ of mandamus.   Affirmed.

*Preston, Thorgrimson & Turner,* for appellant.

*Fred C. Brown* and *Howard A. Hanson* (*Reeves Aylmore, Jr.,* of counsel), for respondent.

BRIDGES, J.—This is a mandamus action, instituted by the Port of Seattle for the purpose of requiring the treasurer of King county to pay over to the relator certain sums of money which the respondent had col-lected as interest, resulting from the deposit by him

[1]Reported in 186 Pac. 257.

of certain port district money in certain depositary banks designated by him. The affidavit and complaint alleged that, at all times since January 1, 1919, the respondent had in his hands, as county treasurer, in excess of $200,000 belonging to the relator, which money the respondent had deposited in various banks, and had received interest on such deposits in the sum of more than $300; that the relator is entitled to have this interest credited to its account; that the respondent has refused to give such credit or to pay such moneys to the relator, because the same belong to the county expense fund of King county. To this complaint the respondent interposed a demurrer, which the court sustained. Relator refused to further plead, and judgment was entered dismissing the action, from which judgment this appeal is taken.

The respondent claims that the interest collected by him belongs to the county expense fund by virtue of the county depositary act of 1907. The act authorizing the creation of port districts provides:

"That all funds of the port district shall be paid to the county treasurer, and all disbursements shall be made by such officer on warrants drawn by the county auditor upon order of or vouchers approved by the port commission." Laws of 1917, p. 503.

Section 1 of the county depositary act (Laws 1907, p. 74, § 1; Rem. Code, § 5072 *et seq.*) provides that,

"Each county treasurer of this state shall on the first day of July, 1907, and annually on the second Monday in January thereafter, and at such other times as he may deem necessary, designate one or more banks in the state as depositary or depositaries of all public funds held and required to be kept by him as such treasurer. . . . No county treasurer shall deposit public money in banks except as herein provided."

Section 2 (Id., § 5073), of the act provides that, before any such designation shall become effectual, the bank or banks so designated shall, within ten days after such designation, file with the county clerk a surety bond in the maximum amount of deposits so designated, or provide such other security as shall be approved. Section 3 (Id., § 5074), provides that,

"Before any such designation or designations shall become effectual and entitle said treasurer to make deposits as hereinabove provided, the bank or banks so designated shall also enter into a written contract with the county whose treasurer is to make such deposits, to pay to' said county, to be credited to the county expense fund thereof, two per centum per annum on the average daily balances of all moneys so deposited by such county treasurer in said bank while acting as such depositary."

Section 4 (Id., § 5075), provides that,

"The county treasurer shall deposit with any depositary or depositaries which have fully complied with all requirements any county moneys in his hands or under his official control, and for the purpose of making the quarterly settlement and counting the funds in the hands of the treasurer any such sums so on deposit shall be deemed to be in the county treasury."

The appellant bases its contention chiefly on section four of the depositary act, and contends that the county treasurer had a right and is obligated to deposit in the depositary banks only "county moneys in his hands or under his official control," and that, since the port moneys are, of course, not county moneys, the treasurer was under no obligation to deposit such money in the various depositaries designated by him, and that if he did so it was a voluntary act on his part and the interest derived by him therefrom belonged to the port district. Such a construction of § 4 would be out of harmony with the remainder of the

depositary act, because § 1 thereof provides that the
county treasurer shall deposit "all public funds held
and required to be kept by him as such treasurer,"
and § 3 expressly provides that the depositaries shall
enter into a written agreement with the county agree-
ing to pay to said county, "to be credited to the county
expense fund thereof," two per cent per annum on
the daily balance of all moneys so deposited. To give
the act the construction contended for by the appel-
lant would require us to hold that the expression "all
public funds held and required to be kept by him as
such treasurer," found in § 1 of the act and expressly
referred to in §§ 2 and 3, means only strictly county
money, and did not include other public funds which
the law requires him to hold, such as port, city, school,
road district and diking district moneys. Such a con-
struction would be contrary to the spirit of the act
and would place county treasurers in a very awkward
and embarrassing position, because they would not be
authorized to deposit any port, school, city or other
like public money held by them, in their depositaries,
and they could not place such moneys in any bank
not a depositary, because the last paragraph of § 1
provides that "no county treasurer shall deposit any
public money in banks except as herein provided."
If they cannot bank under the terms of this act they
cannot bank at all.

The appellant contends that § 4 of the act does not
pretend to designate what moneys shall be deposited
by the county treasurer in the various depositaries,
but merely provides that, when the treasurer makes
his quarterly settlement with the county, it shall not
be necessary to actually count the funds, but that such
deposits of county moneys shall, for the purposes of
such settlement, be deemed to be in the county

treasury. We do not think this construction is correct. If the legislature had in mind this limited meaning it certainly would not have used the language of this section. Such a construction would appear to make it necessary that the county treasurer should make quarterly settlements with the county commissioners only for strictly county money, and not port or other public funds; in any event, under such a construction, in making such accounting or settlements, he could use his deposits as cash only as to strictly county moneys, and would be required to call in all port and other public funds so that the cash might be counted. Certainly the legislature did not intend any such absurd result. The purpose of this act was to furnish a safe place for the keeping of public funds, make the manner of such banking uniform among all county treasurers, stop the common evil and perilous practices of such treasurers in doing their own banking in their own way and reaping a personal benefit thereby, and incidentally to secure some compensation to the county by way of interest. Keeping in view the purposes which the legislature had in mind and the evils it desired to correct, and reading the act as a whole, it must appear plain that the legislature meant this act to cover any and all public moneys in the treasurer's hands, from whatsoever source they came. We think the legislature used the words ''county moneys in his hands or under his official control'' in the sense that any public moneys required to be held by the county treasurer become, for the purpose of keeping and handling the same, moneys of the county, and that such words had reference to any public moneys for which the county and its officials are by law responsible.

The legislature has made specific provision for the banking of public funds held by city treasurers (Rem.

Code, § 5078 *et seq.*); also for funds held by the state treasurer (Rem. Code, § 5065 *et seq.*). It would thus appear that the legislature has undertaken to make provision for banking all public moneys, and a holding that no provision has been made for the banking of port district funds would seem to be contrary to the general legislative policy.

The port district is a public corporation and there cannot be any question but what the legislature had a perfect right to require its funds to be deposited with and kept by the county treasurer. The act nowhere undertakes to compensate the county for the expense of handling the port funds, and it may have been that the legislature had in mind that it would so compensate the county by allowing it to have the benefit of any interest it might collect on the port funds. In any event, the whole matter was within the power and discretion of the legislature.

It is contended by appellant, however, that, inasmuch as the act creating the port district was subsequent to the county depositary act, it will not be presumed that it was the intention of the legislature, in the passage of the depositary act, to include moneys belonging to the port district. We cannot agree with this argument. It must be presumed that, when the legislature provided that the port district moneys should be deposited with the county treasurer, it had in mind the provisions of the depositary act requiring that official to deposit in designated depositaries all public moneys in his hands.

We hold that it was not only the duty of the county treasurer to deposit the port moneys in the various depositaries, but also that it was his duty to credit the interest derived therefrom to the county expense fund.

The demurrer was properly sustained. Judgment affirmed.

HOLCOMB, C. J., FULLERTON, MOUNT, and MITCHELL, JJ., concur.