**FIRST NAT. BANK OF KELSO, WASH., v. GRUVER et al.**

**No. 7243.**

Circuit Court of Appeals, Ninth Circuit.

April 26, 1935.

John F. McCarthy, of Kelso, Wash., for appellant.

G. W. Hamilton, Atty. Gen., John W. Hanna, Asst. Atty. Gen., and Cecil C. Hallin, Pros. Atty., Cowlitz county, Wash., of Longview, Wash., for appellees.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is an appeal from a judgment for defendants. The case was tried by the court without a jury. Appellant contends that upon the facts found judgment should have been for plaintiff.

The First National Bank of Kelso, Wash., is a banking corporation organized and existing under the National Banking Laws. On December 23, 1931, the Comptroller of the Currency took charge of said bank for the purpose of liquidation, and on December 29, 1931, appellant E. B. Benn was appointed receiver. As such receiver he brought suit against the auditor of Cowlitz county, Wash., and his bondsmen to recover money received by the auditor in payment of certain school warrants deposited by the bank with the auditor as security.

In the course of his duties as county auditor, appellee Gruver, was required to collect certain moneys belonging to Cowlitz county, consisting of marriage license fees and fees for hunting and fishing licenses. As far as the record shows, these moneys are the only moneys belonging to Cowlitz county which appellee retains in his possession. Appellee Gruver also issues hunting and fishing licenses for other counties. In cases where the funds received for such licenses are not remitted immediately the same are held in the office of the county auditor until

the remittance is made. Appellee Gruver is also required to and does receive applications for motor vehicle licenses from the state of Washington, and in behalf of the state collects the fees for such licenses at the time the applications are made. In receiving applications and collecting the fees for motor vehicle licenses the appellee acts as a collection agency for the state, and the funds so received by him belong to the state of Washington and are remitted daily to the state treasurer.

At the times involved in this action appellee Gruver carried two checking accounts in appellant bank, one denominated the "Trust Fund" account in which only moneys received from the issuance of marriage licenses were deposited, and the other denominated the "Game Fund" account in which only funds received from hunting and fishing licenses for Cowlitz county were deposited. These two accounts are the only accounts which the appellee Gruver ever had in the bank.

For a period of at least six months prior to the closing of the bank it was the custom of the defendant to make the remittances of automobile license fees to the state treasurer by drafts drawn by the plaintiff bank on the First National Bank of Seattle, and the remittances to other counties for hunting and fishing licenses issued for such other counties were likewise made by drafts drawn by the plaintiff bank upon other banks. These drafts were in every instance purchased by the defendant and paid for in cash (currency, silver, and checks) at the time the same were issued. The record shows that in no instance were any of such drafts purchased or paid for out of the funds which had been on deposit in the bank, and in no instance were any of the motor vehicle license funds or outside county fishing license funds ever deposited in the bank, unless it could be said that the mere payment of these funds to the bank in exchange for the drafts mentioned would constitute a deposit of the same.

During the period from April 1, 1931, to October 1, 1931, the daily balance which said defendant Gruver, as auditor, had on deposit with said plaintiff bank in the "Game Fund" account amounted to from $800 to $1,800, and the average daily balance in said bank in the "Trust Fund" account amounted to approximately $40.

On April 9, 1931, the bank turned over to appellee Gruver certain school warrants of the total face value of $1,503.98. These warrants were identified as to the district number, warrant number, and amount of each warrant by a certain written instrument of date April 9, 1931, specifying the terms and conditions under which said warrants were turned over, reading as follows: "Office of J. G. Gruver, County Auditor, Court House, Kelso, Washington, April 9, 1931. Received of the First National Bank of Kelso, Washington, as security for Cowlitz County funds deposited by me and to be deposited by me in such bank, various school district warrants as follows: * * * Total, $1,503.98. Dated at Kelso, Washington, April 9, 1931. J. G. Gruver, County Auditor."

On December 17, 1931, appellee Gruver purchased from appellant bank a draft on the First National Bank of Seattle for $10.50, payable to the auditor of Skamania county, Wash., and a similar draft for the sum of $1.50 payable to the auditor of Clark county, Wash. These drafts were paid for in cash by appellee and represented funds received by him as county auditor for hunting and fishing licenses issued for Skamania and Clark counties respectively. On December 21, 1931, appellee Gruver had on hand as county auditor $833 in the form of silver, currency, and checks which had been received by him in payment of automobile fees for the state of Washington, and on said day he purchased from appellant bank two drafts on the First National Bank of Seattle, payable to the treasurer of the state of Washington, for the sum of $533 and $300 respectively. These drafts were paid for with the cash, currency, and checks which had been collected in payment of said automobile license fees. At the time the various drafts mentioned were issued, the appellant bank had sufficient funds or credit in the First National Bank of Seattle to pay the same on presentation, and the same would have been paid had appellant bank not closed before the drafts were presented for payment. At the time appellant bank closed—December 23, 1931—appellee Gruver had on deposit in the bank in the "Trust Fund" and "Game Fund" accounts a total balance, including interest, of $58.41.

After the closing of the bank, and on or about December 28, 1931, appellee Gruver sold the school warrants which had been deposited with him and received in payment therefor $1,568.59, and after deducting therefrom the amount represented by the balance of his deposit in the "Trust

Fund" and "Game Fund" accounts, together with the amount of the drafts theretofore purchased, tendered the balance amounting to the sum of $680.38 to the receiver of appellant bank. The tender was refused and demand made upon appellee Gruver for $1,510.18, being the balance of the proceeds of said warrants after deducting therefrom the amount of the balance in the trust and game accounts at the time the bank closed. By stipulation the sum of $680.38 tendered by appellee Gruver was paid to the receiver, it being agreed that the acceptance of the same should not prejudice appellant's right to recover any additional sum which the court might find owing to appellant.

The specific finding respecting said written instrument or receipt hereinbefore quoted contains a concluding statement as follows: "It being agreed by and between said plaintiff bank and said defendant Gruver that such warrants were to protect all funds coming into his hands as County Auditor and deposited by him in said bank as such auditor."

From the foregoing facts found by the court, the conclusions of law were:

"That defendant J. G. Gruver was acting as an officer and agent of Cowlitz County, Washington at the time he collected and received the fees referred to; that as between the State of Washington and Clark and Skamania counties, the moneys thus collected by defendant Gruver belonged to the State of Washington or to Clark and Skamania counties according to their respective rights; as between Cowlitz county and plaintiff bank at the time they were received by plaintiff, they were county funds of Cowlitz county.

"That in purchasing the drafts referred to by defendant Gruver as auditor of Cowlitz county, and paying for the same with funds representing license fees collected by defendant Gruver as such county auditor, such funds were deposited with plaintiff bank upon the delivery of the same to said bank, and title thereto passed to plaintiff bank, and said bank became a debtor of Cowlitz county in the event of nonpayment of the draft or drafts issued by plaintiff bank."

"That defendant Gruver as county auditor had the right to sell the school warrants deposited with him by plaintiff bank and to deduct from the proceeds received from such sale moneys on deposit in said plaintiff bank belonging to Cowlitz county deposited therein by defendant Gruver as county auditor, and to deduct therefrom the face value of the several drafts referred to in the findings of fact * * *."

Appellant assigns as error the conclusions of law made by the court.

The questions of law for determination are: Were the funds exchanged by the appellee Gruver for drafts upon the Seattle bank for transmittal to the state treasurer and to auditors of said other counties, Cowlitz county funds, and did the delivery of such funds to the bank in exchange for such drafts constitute a deposit in said bank within the meaning of said instrument of date April 9, 1931?

Under the laws of the state of Washington, the county treasurer is the custodian of all county funds. Section 4218, Remington's Revised Statutes of Washington, reads: "Every county officer, who, by the laws of this state is allowed a salary, shall, on the first Monday of each month, pay into the county treasury all moneys and sums which have come into his hands for fees and charges in his office, or by virtue of his office, during the preceding month. * * *"

The laws of the state of Washington with respect to the licensing of motor vehicles and the collection of fees therefor, in so far as material in this case, may be found in the following sections of Remington's Revised Statutes:

"§ 6314. The secretary of state, acting through the county auditors, * * * shall have the general supervision of the issuing of motor vehicle licenses and of the collecting of fees therefor. * * *"

"§ 6317. Upon receipt of such application accompanied by the proper fee, the county auditor shall * * * immediately forward the original, together with the proper fee, to the secretary of state. * * *"

The duties imposed upon the secretary of state by virtue of section 6314, supra, have since its enactment devolved upon the director of licenses by the terms of section 6360, which reads: "The director of licenses, * * * shall exercise all the powers * * * by this act vested in * * * the secretary of state, except the receiving of fees and moneys which shall, * * * be paid to the state treasurer. * * *"

Section 5896, Remington's Revised Statutes, dealing with the subject of hunting

and fishing licenses, provides: "Any county auditor shall have the power and authority to issue hunting and fishing licenses for any county of the state, and shall transmit the fees to the auditor of the county for which the license is issued at the close of each month's business. * * *"

Appellee Gruver is liable to account for the proceeds of the school warrants receipted for and sold by him unless he is able to show that the money paid by him to the bank in the purchase of said drafts should be considered as Cowlitz county funds, and such payments be regarded as deposits within the terms of the agreement entered into between himself and said bank, evidenced by the said receipt of date April 9, 1931.

The transcript of the record on appeal does not disclose any express agreement or understanding of the parties respecting the terms and conditions of the pledge of said school warrants as security other than appears from the said receipt. The writing, however, is to be construed in the light of the surrounding circumstances. Provision is made in the statutes of the state of Washington requiring state, county, and city treasurers to deposit public funds held and required to be kept by them as such officers in certain designated banks complying with the conditions authorizing such deposits. Rem. Code 1915, § 5065, et seq.; § 5072, et seq.; § 5078, et seq.; State v. Gaines, 109 Wash. 196, 186 P. 257. No such provision, however, is made respecting county officers, other than county treasurers, authorized to receive county or other public funds before accounting therefor. The deposits made by auditor Gruver in the appellant bank were therefore not made in pursuance of any statute. The question of security for any such deposits or money paid by him for the purchase of drafts was a matter purely of agreement between the respective parties.

It may be conceded that the expression in the receipt, "Cowlitz County funds," should be construed, and was so intended, to be inclusive of "all funds coming into his hands as county auditor and deposited by him in said bank as such auditor" as found by the court below, and as, in effect, alleged in the answers of appellees. In the brief of appellees is cited the case of State v. Gaines, supra, in support of such construction.

We come now to the question whether the moneys in the hands of appellee Gruver, and used by him in the purchase of the said drafts from the appellant bank, were in effect deposits of such moneys in said bank, and for which said school district warrants were security. It is not contended, nor was there any finding to the effect, that there was any understanding between auditor Gruver and the bank respecting the word "deposited" as used in the receipt for the school district warrants held "as security for * * * funds deposited," other than is expressed by the receipt itself. The decision of the court below deals with this question as follows: "Concerning the second question as to whether the transaction described was a 'deposit', it may be conceded that were the transaction one between the bank and the ordinary bank customer with a checking account therein it would not, under the circumstances, be a deposit, Reynes v. Dumont, 130 U. S. 354, 9 S. Ct. 486, 32 L. Ed. 934, but in view of the strict accountability to which county officers are held in handling public money and particularly in view of the constitutional provision above quoted, these funds were 'deposited with the bank.' Upon their delivery by the auditor to the bank, title passed to the bank and the bank became the debtor in case of non-payment of the draft—a debtor subject to suit either by the county or its auditor when paid by them. Such drafts of the bank insofar as effect and principle are concerned, were not essentially different from demand certificates of deposit."

Article 11, § 5, of the Washington state Constitution, referred to in the court's decision, provides: "And it [State legislature] shall provide for the strict accountability of such officers for all fees which may be collected by them, and for all public moneys which may be paid to them, or officially come into their possession."

The "strict accountability" required to be provided for county officers for fees and public money received by them may be a reason why they would or should protect themselves and their bondsmen as far as possible in dealing with such funds, and in the instant case may have occasioned the demand for security for public moneys deposited in the bank. Nevertheless, such accountability is not essentially affected by the security, if any, such officer may take from a bank in which he decides to deposit public moneys or with which bank he may otherwise deal in respect to the same, because such security is not given in pursuance of any provision of statute. The method of "strict accountability" mainly provid-

148

ed for is the official bond. If, as in this case, property is pledged as security, then it is a matter of mutual agreement respecting the terms and conditions of such pledge. The receipt issued for the school warrants recites that they are received "as security for * * * funds deposited * * * and to be deposited." If the word "deposited" was used in its usual acceptation, then the security pledged may not be regarded as security for any other character of debt which may arise between the pledgor and pledgee. Hanover Nat. Bank v. Suddath, 215 U. S. 110, 30 S. Ct. 58, 54 L. Ed. 115; Yardley v. Philler, 167 U. S. 344, 17 S. Ct. 835, 42 L. Ed. 192; Reynes v. Dumont, 130 U. S. 354, 9 S. Ct. 486, 32 L. Ed. 934; Armstrong v. Chemical Nat. Bank (C. C.) 41 F. 234, 6 L. R. A. 226; Bell v. Bank of California, 153 Cal. 234, 94 P. 889; 49 C. J., 936, 972; 21 R. C. L. 653.

As pointed out in the decision of the court below, were the purchase of the drafts made by "the ordinary bank customer with a checking account therein, it would not, under the circumstances, be a deposit." The Supreme Court of Texas, in the case of Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, 499, had occasion to consider distinctions "between the relationship created by the issuance and sale of a draft, and the receipt of a deposit by a bank." The court concludes a somewhat lengthy discussion of the matter, in the course of which a number of authorities are cited, with the statement: "The illustrations show a clear distinction between the obligations and rights which arise from contracts of deposit and of sale and purchase of drafts. Others might be stated, but we deem it unnecessary." In that case the point in question was whether money paid for a draft was "protected by the [depositors'] guaranty fund." The court held that it was not.

■ It appears from the receipt issued for the said school warrants that the same was for security for funds then deposited and also for funds "to be deposited." The only funds ever deposited in the ordinary acceptation of the meaning of the word "deposit" were two strictly Cowlitz county funds representing fees collected by the auditor for marriage licenses and game licenses. The amount collected for game licenses during certain months of the year amounted to a substantial sum. The court found that the receipts for such licenses from April 1 to October 1, 1931, varied from $800 to $1,800 per month. The pro-

visions of the statute, Rem. Rev. Stat. § 4218, supra, required that these fees be paid into the county treasury, not as received, but upon "the first Monday of each month." It appears also that the bank paid interest on these deposits. There is nothing in the attendant circumstances occasioning the giving of the school warrants as a pledge for security indicating that the parties intended such pledge to cover any other liability than that specifically expressed in the receipt. Such pledge did not cover public funds used by the auditor in the purchase of drafts.

While holding that the school warrants were not pledged as security for money paid for the purchase of the said drafts, it is unnecessary to consider any question respecting the limitations upon a national bank to pledge securities. Such limitations are considered in two recent decisions of the Supreme Court: Texas & Pac. Ry. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777; Marion v. Sneeden, 291 U. S. 262, 54 S. Ct. 421, 78 L. Ed. 787.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.