# HANOVER NATIONAL BANK OF NEW YORK *v.* SUDDATH, RECEIVER OF AMERICAN NATIONAL BANK OF ABILENE.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 12.　Argued April 20, 1909.—Decided November 29, 1909.

When a bank refuses to do the particular thing requested with securities delivered to it for that purpose only, it is its duty to return the securities and no general lien in its favor attaches to them.

The fact that a bank has in its possession securities which were sent to it for a particular purpose and which it is its duty to return to the sender, does not justify its retaining them for any other purpose under a banker's agreement giving it a general lien on all securities deposited by the sender.

A banker's agreement giving a general lien on securities deposited by its correspondent will not be construed so as to give it a broad meaning beyond its evident scope and in conflict with the precepts of duty, good faith and confidence necessary for commercial transactions; nor will a printed form prepared by the banker be so extended by the construction of any ambiguous language.

In this case it was held that the retention by a bank of securities for a purpose different from that for which they were sent by its correspondent could not be predicated on the consent of the latter, and that inaction of the correspondent could not be construed as consent.

149 Fed. Rep. 127, affirmed.

THE facts are stated in the opinion.

*Mr. Percy S. Dudley* for plaintiff in error:

Plaintiff in error had the right to retain the notes under the express terms of the collateral agreement. *Auten* v. *Bank,* 174 U. S. 125, 145; *Hiscock* v. *Varick Bank,* 206 U. S. 28, and cases cited. As to scope of words "or otherwise" see *Farr* v. *Nichols,* 132 N. Y. 327. As bailee of the notes the Hanover Bank had a lien on them. Benjamin on Sales, § 2, Am. note. As to construction of the agreement, see *Gillet* v. *Bank,* 160 N. Y. 549; *Sattler* v. *Hallock,* 160 N. Y. 291, 297; *Church* v. *Hubbart,* 2 Cranch, 233; *Hutchinson* v. *Manhattan Co.,* 150 N. Y. 250; 21 Am. & Eng. Ency. Law, 2d ed., 1016. Plaintiff in error had the right to retain the notes by virtue of its bankers' lien. 1 Daniel's Neg. Inst., 5th ed., 342; 1 Morse on Banks, 4th ed., § 324; *Reynes* v. *Dumont,* 130 U. S. 354, 390; *Biebinger* v. *Continental Bank,* 99 U. S. 143; *Bank of Montreal* v. *White,* 154 U. S. 660; *Petrie* v. *Myers,* 54 How. Pr. 513, distinguished, and see *Armstrong* v. *Chemical Bank,* 41 Fed. Rep. 234; *Continental Bank* v. *Weems,* 60 Texas, 489.

The receiver of the Abilene Bank took the assets subject to the claim of the Hanover Bank and obligation existing when he took possession. *Scott* v. *Armstrong,* 146 U. S. 499; *Rankin* v. *City Nat. Bank,* 208 U. S. 541.

The Hanover Bank had the consent of the Abilene Bank to retain the notes. Mailing the letters was a delivery and had the Abilene Bank mailed cash it would have been subject to lien of Hanover Bank although not delivered until after the failure; it is so also as to these notes. *McDonald* v. *Chemical Nat. Bank,* 174 U. S. 610; *Ruggles* v. *Am. Cent. Ins. Co.,* 114 N. Y. 415.

*Mr. Edward B. Whitney,* with whom *Mr. Francis F. Oldham* was on the brief, for defendant in error:

The Hanover Bank had no general lien on the notes involved. *Brandao* v. *Barnett,* 12 Cl. & Fin. 787; Story on Agency, § 381; 1 Morse on Banks, 4th ed., 597; *Bank of Met.*

v. *N. E. Bank*, 1 How. 234, 239; *Leese* v. *Martin*, L. R. 17
Eq. 224, 235; *Reynes* v. *Dumont*, 130 U. S. 354. These and
other cases all hold that where securities are sent for a specific
purpose the recipient cannot hold them for any other purpose
but must return them. 1 Jones on Liens, 2d ed., 244; *Lucas*
v. *Dorrien*, 7 Taunt. 278; *Petrie* v. *Myers*, 54 How. Pr. 513;
*Bank of Montreal* v. *White*, 154 U. S. 660. The bank becomes
a trustee to apply the securities as directed by the sender.
*Libby* v. *Hopkins*, 104 U. S. 309.

The Hanover Bank had no lien on the notes under the
agreement and there was no other agreement or consent un-
der which that bank could hold them. There was no proposal
or acceptance as to the collateral loan and payment of over-
draft. 9 Cyc. 293; *Meyrell* v. *Surtees*, 25 L. J. Ch. 257, 262;
*Scott* v. *Armstrong*, 146 U. S. 511.

MR. JUSTICE WHITE delivered the opinion of the court.

The predecessor of the present receiver of the American
National Bank of Abilene, Texas, sued, in April, 1905, to re-
cover from the Hanover National Bank of New York four
promissory notes or their value.

We shall refer to the corporations as the Abilene Bank and
the Hanover Bank.

At the trial, under instruction, there was verdict for the
Hanover Bank, and the judgment thereon was reversed.
*Van Zandt* v. *Hanover Nat. Bank*, 149 Fed. Rep. 127. In
conformity to the opinion of the Circuit Court of Appeals, on
the new trial a verdict was directed in favor of the receiver,
and to reverse the affirmance of that judgment (*Hanover Nat.
Bank* v. *Suddath*, 153 Fed. Rep. 1021) this writ of error is
prosecuted.

The facts are these: Prior to November, 1903, the Abilene
Bank was a correspondent of the Hanover Bank, and had an
account with the latter. The credit of this account was prin-
cipally made up by the proceeds arising from the rediscount-

ing by the Hanover Bank of commercial paper for account of the Abilene Bank. On November 27, 1903, the Abilene Bank signed an agreement concerning the right of the Hanover Bank, under conditions stated, to attribute to the payment of debts due it by the Abilene Bank securities in its hands belonging to the Abilene Bank. In January, 1905, the Hanover Bank was contingently responsible for commercial paper, aggregating probably sixteen or seventeen thousand dollars, which it had rediscounted for the Abilene Bank, and upon which the latter bank was ultimately liable.

On January 9, 1905, the Abilene Bank transmitted by mail to the Hanover Bank a note of the Hayden Grocery Company for $2,000, drawn to the order of the Abilene Bank and by it indorsed, the letter stating that the note was sent for discount and credit. On the next day—the tenth—the Abilene Bank also transmitted by mail a note drawn by R. H. Logan and W. R. Logan to its order, and by it indorsed likewise, with a statement that it was sent for discount and credit. On the twelfth of the same month the Abilene Bank again transmitted to the Hanover Bank for discount and credit two other notes, one drawn by L. W. Hollis for $3,500, and indorsed, as were the previous notes and a note of C. B. and W. F. Scarborough, for $1,500 likewise so indorsed, the letter of transmittal yet again stating that they were sent for discount and credit.

The Hayden Grocery Company and the Logan notes, forwarded on the ninth and tenth of January, reached the Hanover Bank on the fourteenth; and on that day it telegraphed to the Abilene Bank, declining to discount the notes, and by a second telegram said: "Referring to previous dispatch transfer or ship currency," which, according to the counsel for the Hanover Bank, meant to call upon the Abilene Bank either to transfer a credit from some other bank or ship currency direct. It is not shown that any reply, either by telegram or letter, was made to the messages thus sent on the fourteenth. The notes forwarded on the twelfth reached the Hanover Bank on the sixteenth, and the latter at once tele-

graphed, "Not satisfactory," and confirmed the telegram by a letter, saying: "We are not discounting inclosures for you, but hold same as collateral to your indebtedness to us." The Abilene Bank did not reply by telegram but on the same day wrote to the Hanover Bank as follows:

"We have just received your wire. The rediscounts we sent you were mostly renewals and in every instance 'good as gold.'

"Since the drop in cotton, collections are at a standstill, and our clients expect us to stay with them, and we are obliged to ask the same indulgence from our correspondents.

"Should you prefer, we will send our B/P with collaterals attached.

"We trust you will accord us the leniency asked for."

On the morning of January 17, 1905, there stood on the books of the Hanover Bank to the credit of the Abilene Bank the sum of $616.15. On that day a check on the Hanover Bank, dated January 11, 1905, drawn by the Abilene Bank for the sum of $3,825.45, payable to the New York Life Insurance Company, as also some small checks, passed through the clearing house. Upon attention being directed to the overdraft which thereby resulted a telegram was sent to the Abilene Bank, referring to the previous letters and telegrams, and asking that bank what it had done. No reply having been received before the close of business on that day, the vice-president of the Hanover Bank, after examining the written agreement to which we have previously alluded, allowed the overdraft to stand, and to cover the same made an entry of a loan of $3,500 to the Abilene Bank, which was placed to the credit of that bank, and after absorbing the overdraft, left to its credit the sum of $63.74. On the same day the Hanover Bank wrote to the Abilene Bank, saying: "As your account showed overdrawn to-day over $3,000, have made you a temporary loan of $3,500 against collateral in our hands." On the next day (January 18) the Abilene Bank closed its doors.

It is to be observed that of the letters, the one by the Hanover Bank, written on the seventeenth of January, and the one written on the previous day by the Abilene Bank, did not reach their destination until after the failure of the Abilene Bank.

Thereafter Richard L. Van Zandt was appointed receiver, and, as we have said, commenced this action to recover the possession of the four notes which had been transmitted to the Hanover Bank as above stated, or the value of such notes, and in the course of the action the proceedings took place to which we have at the outset referred.  The ground relied upon for recovery was that as the notes had been sent to the Hanover Bank for discount for the account of the Abilene Bank, upon the Hanover Bank refusing to discount them that bank had no claim whatever upon the notes, and had no right to apply them as collateral to the payment of the voluntary overdraft which had been allowed on the seventeenth of January, and thus obtain a preference to the extent of the appropriation over the general creditors of the Abilene Bank. It suffices to say that the defense of the Hanover Bank controverted this contention, and asserted that the appropriation of the notes was justified under its general bankers' lien or under the terms of the special agreement of November 27, 1903.  During the pendency of the action the Hanover Bank collected three of the notes, deducted from their proceeds the sum of $3,725.86 then due, and paid to the receiver the balance and also delivered to him the uncollected note, being the note of R. H. Logan and W. R. Logan, which had been transmitted to the Hanover Bank on January 10 and was by it received on the fourteenth.

It is contended that the appellate court erred in affirming the ruling of the Circuit Court, directing a verdict for the receiver. The grounds for this contention are that the evidence showed that the Hanover Bank had the right to retain the four notes or the balance of their proceeds, by virtue of its general bankers' lien; and, if not, as a result of the express

provisions of the agreement of November 27, 1903; and, in. any event, by the authority or consent of the Abilene Bank. . Without stopping to consider whether the third contention is not really involved in the first two, we pass to their consideration in the order mentioned.

1. *Was there a right of retention in the New York bank by virtue of its general bankers' lien?*

The rulings of this court foreclose this question, since they conclusively establish that a general lien in favor of a bank cannot attach to securities which are delivered to it in order that it may do a particular thing with them, and that when it refuses to do that thing the duty to return exists. The general subject was elaborately considered and the authorities were fully reviewed in *Reynes* v. *Dumont*, 130 U. S. 354. In that case securities had been sent to bankers for a specific purpose. That purpose having been accomplished, the securities were permitted to remain in the custody of the bankers as depositaries, because they were in a good market and a place convenient for procuring loans, and because the expressage upon their return would have been great. The right to a general bankers' lien upon the securities was denied. Such a lien, it was said (on p. 390), would arise "in favor of a bank or banker out of contract expressed, or implied from the usage of the business, in the absence of anything to show a contrary intention." Ordinarily, it was declared (p. 391) the lien would attach in favor of a bank upon securities and moneys of the customer deposited in the usual course of business, etc. It was, however, expressly declared not to "arise upon securities accidentally in the possession of the bank, or not in its possession in the course of its business as such, nor where the securities are in its hands under circumstances, or where there is a particular mode of dealing, inconsistent with such general lien." *Biebinger* v. *Continental Bank*, 99 U. S. 143, was one of the authorities cited in the opinion. In that case it appeared a deed had been deposited with the bank as collateral security for the customer's current indebtedness

and discounts.   After payment of this indebtedness and a temporary suspension of dealings, the customer incurred new indebtedness to the bank, but as it did not appear that the money was loaned or debt created on the faith of the deposit, of the deed, the bank's claim of a lien thereon was denied. *Bank of Montreal* v. *White*, 154 U. S. 660, is also a pertinent decision.   Without elaborating the issues which were there involved, it suffices to say that in an action to recover upon a promissory note, in order to escape the contention that it was not an innocent holder the bank contended that before the note was sent to it for discount the sender was under a promise to furnish security for advances to be made, and therefore the rights of the bank as an innocent holder were to be determined by the state of its knowledge at the time the note was received, although the discount was declined, and not by the state of knowledge existing when at a subsequent date the note was actually discounted.   In disposing of a contention that the trial court had committed error in not giving an instruction which the bank asked in accord with its contention as just stated, the court said:

"There can be no pretense in this case that the note in suit was ever actually delivered to the bank as collateral security for past or future indebtedness.   In the letter transmitting it, the bank manager was asked to discount it and place the proceeds to the credit of the manufacturing company.   In that event, the 'overdraft kindly allowed on Friday,' was to be charged against the credit, but it is nowhere, even in the remotest degree, intimated that if the discount was declined the note might be kept as collateral.   The charge asked and refused was, therefore, wholly immaterial, and the judgment cannot be reversed because it was not given."

2. *Was the Hanover Bank entitled to retain the notes under the terms of the agreement of November 27, 1903?*

The material portions of the agreement are as follows:

"For and in consideration of one dollar [&c.], the undersigned agree with said bank that all bills of exchange, notes,

checks, and the proceeds thereof, and all other securities, money and property of every kind owned by the undersigned, or either or any of them, or in which they, or any or either of them, have any interest deposited with said bank, or which may hereafter be deposited with said bank, or which may be in any wise in said bank, or under its control, as collateral security for loans or advances already made or hereafter to be made to or for account of the undersigned, by said bank, or otherwise, may be held, collected and retained by said bank until all liabilities, present or future, of the undersigned, or any or either of them, due or not due of every kind to said bank, now or hereafter contracted, shall be paid and fully satisfied."

For the Hanover Bank it is contended that although the notes were not in its possession as collateral security for any debt due it, nevertheless, as it had the physical possession of the notes and they were not unlawfully in its hands, it had under the agreement the power to make the advance to cover the overdraft and to attribute, without the consent of the Abilene Bank, the notes in question as collateral security for the loan which was made. The construction upon which this proposition is rested gives to the agreement the most latitudinarian meaning, and besides, in effect, depends upon considering one or more clauses separately from their context, thereby affixing to them a significance to which they would not be entitled if considered in connection with the text in which they are found. To illustrate: It is said the words which give the power to the Hanover Bank to appropriate any securities "deposited with said bank, or which may hereafter be deposited with said bank, or which may be in any wise in said bank, or under its control," are broad enough to embrace securities in the hands of the Hanover Bank, without considering how they came into the possession of that bank or without taking into account whether that bank had any claim whatever aside from the agreement in question, and without considering whether it was under the plain duty to

return the securities upon demand, and had no right to require the performance of any act or duty by the Abilene Bank in respect thereto.  But this broad interpretation is, we think, unreasonable, since it cannot be assumed, if there be room for implication to the contrary, that the agreement was intended to confer the right upon the Hanover Bank to appropriate securities merely because such securities had come into its physical control and with the obligation to return on demand. We say this, because it is manifest that to attribute the broad meaning claimed would be in conflict with the precepts of duty and good faith, and would be destructive of that confidence and fair dealing so essentially necessary in commercial transactions.  In the light of these considerations we think the language relied upon should not receive the all-embracing meaning sought to be attributed to it, but should be limited so as to cause the same to embrace only property deposited with the Hanover Bank, " or, which may hereafter be deposited with said bank, or which may be in any wise in said bank, or under its control," under circumstances and conditions which gave to that bank by operation of law or otherwise some right to retain such property for a particular purpose.  And irrespective of the meaning which we attribute to the language relied upon, when independently considered, we are of opinion that the want of merit in the construction given to the agreement by the Hanover Bank is clearly demonstrated when the context is brought into view.  That is to say, we consider that the provision of the agreement to which we have just referred is qualified by the language which follows it, viz., "as collateral security for loans or advances already made or hereafter to be made to or for account of the undersigned, by said bank, or otherwise."  In other words, the provision just quoted, we think, must be considered as limitative in its character and as controlling, therefore, the previous stipulations, thus confining the right to apply securities in the possession of the Hanover Bank to such as had come into its possession or control for the purposes de-

scribed. The contention that the words "or otherwise" de-
prive the provision in question of its limitative effect is, we
think, clearly without merit, since that view cannot be up-
held without causing the words in question to dominate and
destroy the meaning of the agreement as derived from a con-
sideration of all its provisions. Particularly is this the case,
as those words are susceptible of a meaning in harmony with
the context; that is to say, may be held to give the right to
retain securities under the circumstances stated, even al-
though the loan may not have been made directly to the Abi-
lene Bank, as, for instance, where the securities belonging
to the Abilene Bank came into the possession of the Hanover
Bank as the result of a rediscounting of paper of the Abilene
Bank. Conclusive as we think are the reasons just stated,
they are additionally fortified by the considerations which
the lower court so cogently pointed out in the opinion by it
announced, that is, that the contract was one prepared by
the Hanover Bank and embodied in a printed form in general
use by that bank, and therefore should have expressed its
purpose beyond doubt and not ambiguously if the language
in question was intended to convey the far-reaching meaning
now sought to be attributed to it.

3. *Was there otherwise a right of retention by the authority or
consent of the Abilene Bank?*

By its answer, the Hanover Bank based its claim of right
to retain the notes in question solely upon its general bank-
ers' lien and the written collateral agreement. The letters
to the Abilene Bank, coupled with the statement of its vice-
president, make plain the fact that the sole reliance of the
Hanover Bank in asserting a claim upon the notes was, in re-
ality, the written agreement. Thus, by its communication of
January 12, 1905, confirming the telegram advising that the
Logan and Hayden notes would not be discounted, the Han-
over informed the Abilene that it held the notes as collateral
for the indebtedness of the Abilene. Again, on the seventeenth
of the same month, following the allowance of the overdraft,

the New York bank wrote: "As your account showed overdrawn to-day over $3,000 we have made you a temporary loan of $3,500 against collateral in our hands." And the belief of the vice-president, that the Hanover Bank was entitled to hold the four notes as collateral which led to the allowance of the overdraft, is clearly shown by the record to have been induced by the terms of the collateral agreement, which he at the time inspected. It may well be that the check of January 11, 1905, for $3,825.45 was issued in the expectation that it would be paid from the proceeds of the Logan note of $2,000 and the Hayden note of $3,000, forwarded for discount on January 9 and 10. But these and the subsequent notes were not sent to be held as collateral security, but to be discounted. The Abilene Bank had been notified by telegram not only that the Logan and Hayden notes would not be discounted, but that it should either transfer credits from other banks or ship currency. The information plainly conveyed by this notification was that checks drawn upon the faith of the discount of the notes referred to must be protected with funds to be furnished. In reason, the Hanover Bank was not entitled to act upon the assumption that the inaction of the Abilene Bank was equivalent to a request to pay the drafts as presented and to hold as collateral the notes which had been sent for discount. The Hanover Bank should, on the contrary, in view of the action of the Abilene Bank, have assumed the possibility that funds could not be supplied, and that the Abilene Bank might therefore be unable to meet its paper and be compelled to cease business. It is apparent that the Hanover Bank in allowing the overdraft did not act upon the assumption that the possession merely of the notes justified its reliance upon them as a security for the advance. We say this because the record leaves no doubt that the device of a temporary loan in order to secure the payment of the overdraft was resorted to upon the faith of rights supposed to inhere in the written agreement. There is no basis, therefore, for the contention that from the circumstances of the

overdraft and the possession of the notes a right of reten-
tion existed created by authority or consent of the Abilene
Bank.

*Affirmed.*