## In re GANS & KLEIN.

### Petition of UNION BANK & TRUST CO.

(District Court, D. Montana. August 23, 1926.)

### No. 4474.

**1. Banks and banking ⊙⇒153.**

Special or specific deposits do not create relation of debtor and creditor, but are in nature of trust.

**2. Set-off and counterclaim ⊙⇒46(1).**

Trustee, having custody of deposit, has no right of set-off against fund, by reason of depositor's debt, which can be exercised to prejudice beneficiaries of trust.

**3. Trusts ⊙⇒96.**

One securing possession of property on his agreement to make a certain application of it must perform accordingly, or return property to him from whom possession was received.

**4. Set-off and counterclaim ⊙⇒22(1).**

By breach of contract a trust cannot be converted into a debt against which claim of former trustee can be set off.

**5. Bankruptcy ⊙⇒159.**

Bank, which was party to agreement for sale of assets of insolvent concern and for use of proceeds in particular manner, *held* not entitled, when such proceeds were deposited with it, to appropriate them in satisfaction of its own claim against insolvent concern.

In Bankruptcy. In the matter of the bankruptcy of Gans & Klein. On petition of the Union Bank & Trust Company for review of the referee's order to surrender a preference. Petition denied, and referee affirmed.

Gunn, Rasch & Hall, of Helena, Mont., for petitioner.

W. D. Rankin, of Helena, Mont., for trustee in bankruptcy.

BOURQUIN, District Judge. The bank seeks review of the referee's order to surrender a preference. In substance and effect the referee's findings are that, by agreement between the bankrupt and the bank, certain deposits by the former with the latter were of special character; that when deposited, and at all times thereafter, the bankrupt was insolvent to the knowledge of the bank, or thereof the bank had reasonable cause to believe; and that thereafter and without right the bank applied the deposits upon the bankrupt's debts to it, thus effecting a preference to its knowledge, or whereof it had reasonable cause to believe.

In the evidence is some conflict, but not in that which is vital; and no reason appears to disregard the rule that, the trier of facts having seen and heard the witnesses, his resolution of conflicts will not be disturbed, save in extraordinary circumstances absent here. The evidence is that early in December, 1925, the bankrupt owed the bank $10,000 upon a 90-day renewal note and $1,300 upon an overdraft, owed $35,000 to relatives of its president manager, and $16,000 to Eastern supply houses, was without funds, insolvent, pressed by creditors, suspension of business imminent, and in extremis. Thereupon its president manager was ousted by Loble, son of the principal creditor relative, and various conferences followed between Loble, for the bankrupt, and McKinnon and Bogart, for the bank.

The outcome was an agreement that the relatives and bank would refrain from press-

ing their claims, an extraordinary sale of the bankrupt's stock in trade would be had, and the proceeds would be deposited in the bank and devoted to payment of urgent Eastern creditors, all in the hope and to the end that continued credit and supplies might be secured, solvency restored, and all creditors finally paid. Despite some conflict in details, there is none that the plan was the bank's and the agreement made upon its insistence. This agreement was so far executed that the sale was had, and thereafter and to January 25, 1926, when the voluntary petition for adjudication was filed, the deposits served to extinguish the overdraft, to pay some $6,000 of the bankrupt's checks for current expenses and other accounts, and to accumulate a residue of $8,378.56, which on the date last aforesaid the bank applied in payment upon the bankrupt's note aforesaid.

In the meantime, however, the bank had refused to permit the use of the deposits to pay the Eastern creditors, and none such were paid; that is to say, the bank repudiated the agreement, the contract by which alone the bankrupt's assets were converted into money and deposited with the bank. It is the bank's contention that its application of the deposits as aforesaid is sanctioned by the right of set-off recognized by section 68, B. A. (Comp. St. § 9652). This cannot be maintained.

[1] Special or specific deposits do not create the relation of debtor and creditor, but are in the nature of a trust. The special contract by virtue of which the bank receives them is inconsistent with and avoids the otherwise right of lien and set-off implied in the ordinary contract of deposits. In this case, since they were in the name of the bankrupt, and upon its orders were to be paid to the beneficiaries, both bankrupt and bank occupied the status of trustee of the fund. In so far as some thereof were paid for current expenses and other accounts, it was implied from the beginning, or was a more or less necessary modification by conduct from time to time, to execute the agreement and to continue the plan.

[2] And the law is well settled (the general law of deposits and trusts) that the trustee, having custody of the deposit, has no right of set-off against the fund, by reason of the depositor's debt to the depository, which can be exercised to the prejudice of the beneficiaries or any one in their right. See U. S. v. Butterworth, 267 U. S. 387, 45 S. Ct. 338, 69 L. Ed.

672; Libby v. Hopkins, 104 U. S. 308, 26 L. Ed. 769; In re Davis (D. C.) 119 F. 950; Wagner v. Bank, 122 Tenn. 164, 122 S. W. 245, 28 L. R. A. (N. S.) 48, 135 Am. St. Rep. 869, 19 Ann. Cas. 483; Lynam v. Belfast, 98 Me. 448, 57 A. 799; cases, 7 C. Jur. 631, 660.

[3] Moreover, the law is equally settled that he who secures possession of property or money, upon his agreement to make certain disposition or application of it, is obligated to perform accordingly or to return the thing to him from whom possession was received. He cannot repudiate his contract, and, in advantage of his wrong, otherwise dispose of the thing to his own benefit. Hanover v. Suddath, 215 U. S. 116, 30 S. Ct. 58, 54 L. Ed. 115; Id., 215 U. S. 124, 30 S. Ct. 63, 54 L. Ed. 120; Smith v. Sanborn State Bank, 146 Iowa, 640, 126 N. W. 779, 30 L. R. A. (N. S.) 517.

[4] By breach of contract a trust cannot be converted to a debt, the title to special deposits cannot be transferred, and set-off against them cannot be had by the defaulting contractor. Essential confidence, fair dealing, and common honesty in business forbid. Libby v. Hopkins, supra.

[5] In the circumstances, to sanction the set-off would effect a preference; for the transfer occurred when the bank knew a preference would result. See Studley v. Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313. Whether or not from the beginning the bank in shrewd strategy intended to bring about the deposits for purpose of set-off is immaterial. At any rate, it inspired the conversion of the assets to money deposits, and created and sought advantage from the opportunity for set-off thus presented.

The intervening trustee of the estate in bankruptcy, in right of the beneficiaries of the deposits and in that of other creditors of the bankrupt to share therein, defeats set-off. Herein is no conflict with Continental, etc., Co. v. Chicago, etc., Co., 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268. Ignoring its rather summary if not unsatisfactory disposal of the issue of special deposits, that case, unlike this, deals with a trust not inspired by the bank, not for its benefit, and a trust executed in good faith, wherein was a residue which alone was subjected to set-off, and all at a time when there could be no preference unless by the bankrupt intended.

Petition denied; referee affirmed.