GRETCHEN FINCH BAYLE, Plaintiff, v. FIRST NATIONAL BANK OF GLENS FALLS, Defendant.

Supreme Court, Warren County, December 31, 1937.

*John H. Barker*, for the plaintiff.

*Daniel F. Imrie*, for the defendant.

BREWSTER, J.   This action is brought for a judgment to compel the defendant, which is its own transfer agent, to transfer to plaintiff 147 shares of its capital stock which stand in the name of her husband on the books of the defendant, certificates of which he indorsed in blank and delivered to an assistant cashier of the defendant with instructions to make such transfer.  Such an action, equitable in nature, has been distinctly long recognized by our courts.   (*Cushman* v. *Thayer Mfg. Jewelry Co.*, 76 N. Y. 365, 368; *Travis* v. *Knox Terpezone Co.*, 215 id. 259, 263.)   It is undisputed that the delivery of the certificates to defendant's assistant cashier was for the one and only purpose of having such transfer effected pursuant to such instructions and that they were received by the assistant cashier for such purpose and with the express

assurance that it would be accomplished. The defendant later refused to complete the transfer. It rested its refusal to do so and resists this action upon the ground that, once the certificates were thus delivered to its assistant cashier, it had the right to seize upon them and hold them as additional collateral to the husband's note owned by it, dated April 1, 1932, a provision whereof reads as follows: " The undersigned also hereby gives to said bank a lien, for the amount of this note and said indebtedness and liabilities, *upon the title or interest of the undersigned, in any other property or securities, left with said bank or coming into its possession in any manner, at any time,* such property or securities to be regarded as additional collateral security for said indebtedness and liabilities." (Writer's italics.)

It appears that the plaintiff and another indorsed her husband's demand note for the purchase price of said stock from one Fowler in 1933; that later and in 1935 part of the note having been called for payment, she loaned her husband $10,000, the amount of the call, and took his note therefor; that the balance of said note was called in May, 1936, at which time she made him another loan of $5,400, with which he completed the payment for the stock, giving plaintiff his second note therefor. The evidence is that after Mr. Bayle bought this stock he was elected a director of the defendant and that this was contemplated when he purchased it. It further appears that at the time of each of plaintiff's said loans to her husband it was agreed between them that, since the stock could not be lawfully pledged or encumbered during his incumbency as one of defendant's directors, he would, upon ceasing to be a director, turn the stock over to her if his circumstances were such that he was otherwise unable to pay the loans, as payment thereof or as a payment thereon if its then market value was less than what was due on the loan.

On July 6, 1937, Mr. Bayle mailed defendant his letter of resignation as director. Of this he informed plaintiff and, being unable to otherwise pay the plaintiff for said loans, with her acquiescence he proceeded to the bank, took the stock certificates from his private safety deposit box, and gave them to defendant's assistant cashier under the circumstances heretofore related.

The defendant takes the position that the transaction between plaintiff and her husband amounted only to an attempted transfer of the stock to her so that up to the moment the certificates were left with it or came into its possession, the legal title thereto was still in Mr. Bayle and was encumbered, and that, accordingly, it had the right to stop any further attempt to effectuate the transfer to plaintiff which had been agreed upon between her and her husband,

and, upon doing so, to then hold the stock as additional collateral to his note under and pursuant to its above-quoted terms. In taking this position defendant places reliance upon certain sections of the Personal Property Law, principally section 171. It does not seem to me that these statutory provisions determine the controversy, and for these reasons:

1. The uncompleted process of the mechanics of the transfer to plaintiff was due solely to the act of the defendant in refusing to carry out the instructions of her husband. The attempted transfer thus gets its inchoate status solely as a result of the blocking of further steps deliberately placed by defendant, and thus placed, it may be said, in order that it, rather than the plaintiff, should be the one of the two creditors to have the advantage. The plaintiff here invokes the equitable power of the court. To defeat that defendant presents the result of its own act which it claims produced the situation described in the statute upon which it relies. Equitably, the stock belonged to the plaintiff when the certificates were left with Mr. Koch for a particular purpose. The bank now bases its claims to the certificates and the stock represented thereby upon the naked legal title which remains in their debtor solely by reason of its act which was committed in frustration of that purpose. This does not seem to be a defense of which equity should take cognizance.

2. Mr. Bayle had the right to act as the agent for his wife in arranging for the transfer to her after he had indorsed the stock to her, even though it was an indorsement in blank. In equity and good conscience, it seems, the stock became hers upon his resigning as director and its indorsement for transfer to her. (*Parsons* v. *Lipe*, 158 Misc. 32, 61, 63; affd., 243 App. Div. 681; affd., 269 N. Y. 630.) While, as between them only, the transfer was inchoate as long as the certificates were in his possession, it may well be that the requisite delivery called for by the statute was accomplished when he surrendered them to Mr. Koch, the assistant cashier, for the performance of the remainder of the routine which would perfect and register her legal title and definitely make the stock they represented irrevocably hers. The statute (Pers. Prop. Law, § 171) specifies no formalities respecting the " delivery " it makes requisite for the transfer of title to a stock certificate. Thus only the well known legal essentials seem to be required. As enumerated in the opinion of Mr. Justice HEFFERNAN in *Safford* v. *Burke* (130 Misc. 12), all those essentials seem to have been present when Mr. Bayle indorsed the certificates and left them with Mr. Koch under the circumstances aforestated, viz.: Mr. Bayle's act was " final "

so far as he was personally concerned; it was his "manifest intention to make such a delivery coupled with a complete surrender and parting with control"; they, the certificates, passed under the dominion of some person on behalf of the transferee. While the above case concerned the delivery of a deed a further quotation therefrom is pertinent, viz.: "While it is not imperative that the grantee should be present at the execution in order to have such a delivery of the instrument made as will give it operative vitality and effect, it is necessary that it should be placed within the power of some other person for the grantee's use or that the grantor should unequivocally indicate it to be his intention that the instrument shall take effect as a conveyance of property in order to have it produce that result." (*Safford* v. *Burke, supra,* at p. 14. See, also, *Fisher* v. *Hall,* 41 N. Y. 416.)

However, I prefer to view this case from another angle. As I look at it the plaintiff must prevail here unless the defendant justifies its retention of these stock certificates as additional collateral to its note of her husband. The phrase in the note, "left with said bank or coming into its possession in any manner, at any time," must have some limitation. I assume all must agree that larceny and conversion are eliminated as a means, method or manner whereby the defendant's possession of the debtor's securities may render them liable as additional collateral. I think no one will attempt to justify trickery, chicanery or any artifice whereby the debtor is deluded or fooled, as a means which ends in a "possession" having such consequences.

As a generality of expression it is my thought that, under the questioned phraseology of this note, it may be laid down that when securities or things are "left with the bank" they must be left there, consciously as to the debtor, or under circumstances showing that he knows, or, as a reasonably prudent person, that he should have known, that the bank could, if it choose, seize upon and hold them as additional collateral to the note he signed; and that, under the other phrase "coming into its possession in any manner, at any time," such possession must be obtained by the bank in its corporate capacity as a banking institution and in the ordinary course of the transaction of its business as such and under circumstances as aforesaid.

In *Hanover National Bank* v. *Suddath* (215 U. S. 110) the agreement there under consideration employed language equally broad. It specified that the plaintiff might hold, collect and retain "all other securities, money and property of every kind owned" by the other party "*which may be in any wise in said bank* or under its control, as collateral security for loans or advances already made or

hereafter to be made " to the other party " *by said bank, or otherwise.*" It was there held that a " most latitudinarian meaning " of this language would be unreasonable and in that connection the court said: " But this broad interpretation is, we think, unreasonable, since it cannot be assumed, if there be room for implication to the contrary, that the agreement was intended to confer the right upon the Hanover Bank to appropriate securities merely because such securities had come into its physical control and with the obligation to return on demand. We say this, because it is manifest that to attribute the broad meaning claimed would be in conflict with the precepts of duty and good faith, and would be destructive of that confidence and fair dealings so esentially necessary in commercial transactions. In the light of these considerations we think the language relied upon should not receive the all-embracing meaning sought to be attributed to it, but should be limited so as to cause the same to embrace only property deposited with the Hanover Bank, ' or which may hereafter be deposited with said bank, or which may be in any wise in said bank, or under its control,' under circumstances and conditions which gave to that bank by operation of law or otherwise some right to retain such property for a particular purpose."

Tested by these rules the certificates in question were thus not " left with the bank," nor did they ever come into its " possession " within the meaning of that word as it is employed in the note and as I find it must be there defined.

To effect the transfer of this stock to the plaintiff it was necessary that her husband deliver the certificates to someone. She consented to have him act for her. He chose Mr. Koch to witness his signature to the indorsement and to continue the further agency to effect the transfer he thus directed. For aught that appears in the evidence he left them with Mr. Koch in the latter's individual capacity merely as a matter of convenience and necessity in order to have the detail of the directed transfer accomplished. The evidence plainly indicates that the choice of other officers of the bank to hold them as collateral to the husband's note was an afterthought. It necessarily had to be an afterthought because until the certificates were delivered to Mr. Koch as aforestated there was no way for the defendant to compel their addition to the collateral. In my opinion, under the evidence presented, these certificates were thus never " left with the bank " nor did they ever come into its " possession " in the regular course of the transaction of its business as a banking institution. Such physical possession of them as the defendant ever secured, and the possession it now has was a legal possession only as its own transfer agent.

In my opinion a case then arose where the defendant was obliged to proceed as its own transfer agent and as the agent of the plaintiff to complete the matter as it had been directed to do. Then there arose a duty for the defendant to act without letting its left hand know that its right hand was doing.

All of the defendant's motions to dismiss are denied and judgment is awarded to the plaintiff for the relief demanded in the complaint.

Settle decision on notice.