Edith E. HARRISON, Plaintiff-Respondent,

v.

John E. HARRISON and the American Insurance Company, a corporation, Garnishee, Defendants,

The American Insurance Company, a corporation, Garnishee, Defendant-Appellant.

No. 32568.

St. Louis Court of Appeals.

Missouri.

June 13, 1967.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, Morris E. Stokes, William L. Davis, St. Louis, for defendant-appellant.

Robert C. Brinkman, St. Louis, for plaintiff-respondent.

TOWNSEND, Commissioner.

Garnishment in pursuit of a surplus of collateral deposited with American Insurance Company upon its issuance of a supersedeas bond.

In a court-tried case, plaintiff adduced evidence to the following effect:

1. *Background.* In 1958 plaintiff Edith Harrison caused the issuance of writs of execution for the purpose of procuring satisfaction of sums then due her from John Harrison for alimony and child support under a divorce decree rendered in 1953; writs of garnishment in aid of execution were addressed to two certain corporations in which defendant John Harrison had been a shareholder. In April 1956 the Harrison shares had been transferred into the single name of Louise Harrison, second wife of defendant John Harrison. In that garnishment proceeding the plaintiff

charged that the transfer of shares to Louise Harrison constituted a fraud upon creditors; Louise Harrison interpleaded. In June 1959 the trial court ruled that such transfers were fraudulent, ordered that certificates for the shares be delivered to the sheriff and ordered the sheriff to sell them at public sale; judgment for $7421 was entered in favor of Edith Harrison. Louise Harrison appealed. The holding and judgment of the trial court were sustained in October 1960 by the St. Louis Court of Appeals, except that the amount of the judgment was reduced to $4400, 339 S.W.2d 509. In the meantime each of the garnishee corporations had sold substantially all its assets to American Marietta Company and General American Investors Company respectively and received in exchange shares in the latter companies which were ultimately distributed to shareholders in the respective selling companies. When the interpleader appealed from the judgment of the Circuit Court she posted a supersedeas bond on which the present garnishee was surety and thereupon the court released the shares. On July 29, 1959, John Harrison and Louise Harrison executed their receipt for two certificates representing respectively 75 and 37 shares of American Marietta and for three certificates, totalling 210 shares, of General American Investors Company, all registered in the name of Louise Harrison, together with seven checks of American Marietta Company totalling $196 payable to Louise Harrison and representing dividends of that company payable November 11, 1957 and thereafter, and one check of the predecessor of General American Investors Company for $1089 payable to Mrs. Louise E. Harrison, drawn on Mercantile Trust Company, St. Louis, and representing the total amount of dividends of the predecessor declared on shares "standing in the name of Mrs. Louise E. Harrison since December 20, 1956".[1] The receipt

---

1. The receipt also included a check for $14.88 for one-half share of American Marietta to which presumably the appropriate shareholder would be entitled upon the distribution of American Marietta shares.

embodied also an agreement by Louise Harrison and John Harrison to indemnify each of the predecessor corporations to the extent of $5000 for any liability as garnishee in the then pending litigation.

2. *The supersedeas bond.* On July 29, 1959, Louise Harrison entered her order with Mercantile Trust Company of St. Louis for the purchase of one $10,000 United States Treasury note and two $1,000 treasury notes. The purchase price was $12,048.15. The records of the trust company show that the notes so purchased were delivered to American Insurance Company, garnishee herein, on August 6, 1959; such records show also that the notes were paid for by a check on Mercantile Trust Company for $3235.31, four checks on Indian River Citrus Bank of Vero Beach, Florida (one for $7561.01, and three for $340 each) and $231.83 cash. The records do not show the identity of the drawer or drawers of the checks. Mr. Heuerman, a local representative of a stock exchange firm with over forty-three years experience in the investment and brokerage business, testified that on July 29, 1959, both shares of American Marietta and General American Investors were traded in only on the over-the-counter market and that on that day they were quoted as follows:

American Marietta, 43 5/8 bid, 46 1/8 asked; General American Investors, 35 1/8 bid, 35 1/8 asked.

The underwriter of American Insurance Company testified that John Harrison, Louise Harrison, their attorney and he gathered at the Mercantile Trust Company on a date not specified solely for the purpose of turning "over the collateral to me so that we could effect immediate execution of the appeal bond". At that meeting Louise Harrison signed the collateral pledge agreement identifying $12,000 face value of treasury notes and at that time the underwriter took delivery of the notes. The underwriter stated that at that meeting Louise

Harrison took a checkbook from her pocketbook, wrote out a check and passed it to the person behind the bond counter at the bank—"there were papers passed back and forth".

"Q. Did anybody hand out any checks or cash?

A. Not that I saw.

Q. Was any cash given by Mrs. Harrison to this teller?

A. Not that I saw.

Q. Just the one check?—A. Yes, sir.

\*    \*    \*    \*    \*    \*

A. And subsequent to that time, somebody gave her these treasury notes and they were handed to you?

A. Right."

By deposition taken on April 13, 1959, in the prior garnishment proceeding, Louise Harrison testified that she had no financial means before her marriage to John Harrison other than her earnings as switchboard operator and receptionist, that after her marriage to John Harrison in April 1953 she had no earnings in St. Louis, that at the time of the deposition she was a part-time model for a dress shop in Florida and that the earnings therefrom were the only earnings which she had had since marriage, that she had no income from any source in 1955 and 1956.

3. *Disposition of the Collateral.* The writ of garnishment herein was served on American Insurance Company on November 9, 1960, by service upon the Superintendent of Insurance. On January 9, 1961, the attorney for Louise Harrison advised the American Insurance Company that the Supreme Court of Missouri had that day denied application to transfer the prior garnishment case to the Supreme Court and that the judgment against her for $4400 stood affirmed; he authorized and requested the insurance company to satisfy the judgment, a direction confirmed

by letter of Louise Harrison to the insurance company under date of February 11, 1961. Under the January date the attorney requested the insurance company to pay over "the balance then remaining in your hands" to Louise Harrison at her Vero Beach, Florida, address. The judgment was not paid until February 16, 1961, when $5425.07 was paid to the use of Edith Harrison and $592.05 to the Clerk of the Circuit Court as costs. On February 20, 1961, the attorney for Louise Harrison renewed his request that the unused portion of the posted collateral be returned to her. The last request not having been complied with, the attorney advised the insurance company under date of February 28, 1961 that "we shall be required to hold your company personally liable for all costs, expenses and liabilities" resulting from failure to release to Louise Harrison the unused portion of the deposited securities. By registered mail, the attorney of the *garnishor* was notified by the insurance company's attorney on March 24, 1961 that "any funds which we hold for Louise Harrison will be turned over to her within the next 48 hours unless a bond protecting us with reference to any losses or expenses we may suffer as a result of holding the funds of Louise Harrison." [Sic] Garnishee's pleading asserts that after payment of the judgment including costs the garnishee had in possession from the collateral deposited by Louise Harrison one $1000 treasury note and $4126.77 in cash. On April 14, 1961, Louise Harrison executed her receipt to the garnishee for "the collateral security described on the face" of the collateral pledge agreement and at the same time delivered to American Insurance Company an indemnity bond signed by herself as principal and by Florida Home Insurance Company of Miami, Florida, as surety, conditioned to hold American Insurance Company harmless for all loss arising out of the release to Louise Harrison of the collateral security.

John Harrison and Louise Harrison were duly summoned as witnesses to testify and make discovery at the taking of depositions at Vero Beach, Florida, on named dates in March 1963; both appeared and refused to testify. Thereafter the Circuit Court of St. Louis issued its order directing them to appear for the purpose of undergoing oral examination and making discovery touching the issues in this case; personal service of that order with subpoena duces tecum was had upon each and they were duly notified to attend and give answers in depositions at Vero Beach on a named date in October 1964. Neither appeared. Appellant was represented by counsel upon both deposition occasions.

On February 2, 1966, the Circuit Court gave judgment in favor of plaintiff Edith Harrison and against garnishee American Insurance Company for $5950 plus interest at the rate of 6% amounting to $1894, all totalling $7844.

That a garnishment proceeding is an appropriate forum in which to try an issue of fraudulent transfer of personalty has been well established in the appellate courts of this state. Graff v. Continental Auto Insurance Underwriters, 225 Mo.App. 85, 35 S.W.2d 926; Potter v. Whitten, 170 Mo.App. 108, 155 S.W. 80; McDaniel v. Bryan, 123 Mo.App. 640, 100 S.W. 1103. In Potter v. Whitten, the Court of Appeals stated: "The law seems to be well settled in this state that a judgment creditor may pursue the funds in the hands of a third person, who is a bailee or transferee or assignee, to try the question of a fraudulent transfer in a garnishment proceeding; and all the cases we have examined arising in Missouri, except the case of McDaniel v. Bryan, supra, are cases where the relation of debtor and creditor did not exist; the relation of bailee, assignee, custodian, etc., being the relation that existed in those cases. * * * we can see no difference * * * between the debtor who makes a contract to pay certain money and a bailee

who makes a contract to return certain property. The contractual relation, so far as the debtor or bailee is concerned, is the same; one agreeing to pay money or to pay a debt, and the other to return specific articles. The courts have held that property in the hands of a bailee or a fraudulent transferee is subject to garnishment * * *." We perceive no reason why the principle so enunciated is not as well applicable to the bailee of a fraudulent grantee of a judgment debtor as to the bailee of the judgment debtor, so long as, and to the extent that, the bailee of the fraudulent grantee is not a bona fide purchaser for value. The former is the kind of case which the plaintiff has alleged in the present situation.

The only point made by appellant in its brief in this Court is that the Court erred in entering judgment for plaintiff which in its turn is based upon two propositions: (1) that plaintiff failed to show that when the garnishee returned the collateral it had been sufficiently advised of plaintiff's claim that the funds belonged to someone other than Louise Harrison and (2) that the evidence failed to show that garnishee held property belonging to John Harrison at the time of, or subsequent to, service of the writ of garnishment.

■ Upon the appeal of a court-tried case it is the duty of this Court to review the whole case upon the law and the evidence as in suits of an equitable nature and hence this Court may make its own findings of fact. However the judgment shall not be set aside unless clearly erroneous. Section 73.01(d), Rules of Civil Procedure, V.A. M.R.

As to appellant's first proposition: When the appellant executed the supersedeas bond in the prior garnishment proceeding appellant was fully apprised of the fact that the principal debtor was John Harrison, that the trial court had adjudged Louise Harrison to be the fraudulent transferee of John Harrison's assets and that Louise was

posting collateral in the hope of procuring a reversal of that judgment which would leave such assets in her hands free of the taint of fraud. When the writ of garnishment in the present proceeding was served upon appellant in November 1960 it was well informed that the writ was issued in aid of execution upon a judgment against John Harrison. Knowledge of the real issue in this case, namely, that plaintiff was contending that the posted collateral was the property of John, may be inferred from appellant's motions on February 1 and 10, 1961 to quash the execution against John Harrison; thereby it attacked the entire basis of the writ of garnishment served on it and so moved to the protection of John. If such a motion had been sustained no proceeding against either John or Louise would then have been pending and nothing would have stood in the way of immediate release of the surplus collateral to Louise. Why was the appellant not satisfied with merely answering the interrogatories propounded to it by plaintiff on January 25, 1961? All that is above described antedated the payment of the judgment and so antedated the release of the surplus collateral. Strong evidence that appellant knew that plaintiff-garnishor was claiming that the collateral belonged to John Harrison and not to Louise lies in the fact that appellant's attorney wrote to the attorney of *plaintiff-garnishor* that appellant would turn over the surplus collateral to Louise within 48 hours unless a bond protecting appellant with reference to any losses resulting from withholding delivery of the surplus to Louise was posted. In that letter he stated: "This is a notice to you of our action. I would appreciate if you would advise us immediately." It is difficult to conceive of such a letter being written by appellant to plaintiff if it were unaware that plaintiff was contending that the collateral belonged to John Harrison. Moreover the state of mind of those acting for appellant is indicated by the fact that they released the surplus to Louise only upon her furnishing of an indemnity bond with surety to hold appellant

**44**

harmless in the matter of the release. If they had no information that another person was claiming that the collateral was not the property of Louise there certainly was no excuse for delay in delivering the surplus collateral to Louise and no point in requiring an indemnity bond relating to such delivery. Under such circumstances her receipt alone would have been all-sufficient.

Finally, at the trial of the case, objection was made to the introduction of the indemnity bond and in the course of argument between counsel, the plaintiff's counsel inquired:

"Does the court believe that it [the indemnity bond] could tend to show that they had knowledge of the fact that we are claiming this property [the collateral] as John's?"

Appellant's counsel responded:

"Well, it is fairly obvious that the writ of garnishment would notify them that somebody is claiming this property is John Harrison's."

■ The Court is of opinion that appellant was well advised that the garnishor was claiming that the posted collateral was the property of John, and so finds.

■ In this connection appellant makes much of its contractual obligation (under the terms of the collateral pledge agreement) to return to pledgor Louise any surplus collateral remaining after payment of the judgment in the first garnishment proceeding. Of course, such contractual obligation adds nothing to the legal relationship which would exist between the parties if there were no express provision for return of the surplus. It is elementary law that where assets have been placed in the hands of a bailee for a stated purpose or purposes possession of them may not be retained for any other purpose. Hanover National Bank v. Suddath, 215 U.S. 110, 30 S.Ct. 58, 54 L.Ed. 115; Stone v. Guardian Trust Com-

pany, Ohio Mun.Ct., 4 Ohio Supp. 4, 1 Ohio Op. 529; Masonic Savings Bank v. Bangs' Admr., 84 Ky. 135; American Surety Co. v. De Escalada, 47 Ariz. 457, 56 P.2d 665. Consequently any continued refusal to deliver such assets after the stated purpose had been served would subject the bailee to an action for conversion whether or not there was a contractual commitment for return. In the present case the appellant had ample opportunity to immunize itself from a charge of conversion by utilizing the time-honored equity suit in interpleader.

■ Appellant contends that it was estopped to deny the title of Louise Harrison as pledgor and to attempt to do so would have been at its peril. We do not find that the use of interpleader is a denial of anybody's title; it merely asserts that the bailee or debtor has been placed in a position of peril by the contentions and claims of adverse parties and in his perplexity he asks the court to resolve his honest doubts. Referring to the trial court's opinion that appellant could have used interpleader, appellant maintains that such conduct on its part "would require garnishee to breach its pledge agreement, and risk a suit by pledgor for conversion." By what has heretofore been said, it is obvious that we do not agree with the conclusion so reached by appellant.

■ Adverting to appellant's argument that it was bound by contract to return the surplus collateral to Louise Harrison, it will be found upon analysis that this amounts to a contention, in all its simplicity, that when a bailor bails assets to a bailee the institution of the bailment removes such assets from the possibility of being subjected to the demands of claimants adverse to the bailor. We do not conceive such to be the law. The superior interest of a third person cannot be extinguished by a contract between bailor and bailee extending into the future. However, it is well recognized that in the present case the bailee is the pledgee of presumed negotiable securities and as

between itself and the bailor it has a pledgee's lien for any amount which it paid under the terms of the supersedeas bond; to that extent it is a bona fide purchaser, so far as the evidence herein shows. After that amount has been paid from the pledged property, the contract right of the pledgor— or a pledgor's right in the absence of express terms in the contract—to a return of the balance of the pledged assets may always be subjected and subordinated to the superior right of an adverse claimant. We do not find the contract between appellant and Louise Harrison to be an obstacle in the way of the plaintiff in establishing her superior right to the surplus collateral if by the evidence she can sustain the burden of showing such superior right.

Appellant's delivery of the surplus was at its own risk, as far as the garnishor was concerned.

Turning now to appellant's second proposition, namely, that the evidence fails to show that appellant held any property of the execution debtor at or after service of the writ of garnishment, we proceed to consider the evidence.

The decision of this court in Harrison v. Harrison, Mo.App., 339 S.W.2d 509, established conclusively that the share certificates and the checks for which John and Louise Harrison gave their receipt dated July 29, 1959, were assets of John Harrison, fraudulently conveyed to Louise. On that same date Louise Harrison entered her order with Mercantile Trust Company for the purchase of $12,000 face amount of United States Treasury notes. On August 6, 1959, Louise received delivery of $12,000 face amount of treasury notes from Mercantile Trust Company and immediately delivered them to the underwriter of the insurance company; she paid for the notes with five checks and a small amount of cash, as previously stated. The identity of the drawer or drawers of the checks is not disclosed by the trust company's record. The underwriter testified that he saw Louise write out and deliver only one check to the teller handling the transaction.

Three and one-half months prior to the order for the purchase of the treasury notes Louise had testified in the prior garnishment proceeding that she had no financial means when she married John in 1953 and that the only income which she had had since marriage was that derived from a then current employment as a part-time model in a Florida dress shop.[2] The record discloses no evidence of any accession of wealth in the three and one-half months period, or, indeed, at any other time.

In the effort to show the connection between the assets of John (share certificates and checks) receipted for on July 29 and the expenditure of $12,048.14 for treasury notes on August 6, the plaintiff-garnishor utilizes the expert testimony of the broker's representative. (1) By that testimony she shows that one of the share certificates of American Marietta (75 shares) would have had a net market value, after deducting broker's commission and transfer tax, of about $3235.12. One of the checks delivered to Mercantile Trust Company was for $3235.31. (2) Next, the 37 share certificate of American Marietta and the 210 share certificate of General American Investors, both taken at the bid price, would have had a market value of $8990.37. From this she hypothesizes that an 84 per cent loan (apparently taken as a standard or conventional amount) on such certificates would have produced

2. Further testimony of Louise Harrison upon that occasion follows: "Q Now, with your own earnings from your part-time employment, have you turned that into the common household fund? A Yes, I have. Q And in addition to the position that you now hold on a part-time basis with that dress company, have you had an income in the past? A No. Q You say he [John] has no bank account since 1956 when you moved down there. Are all the bills paid out of your bank account? A No, sir, I didn't have that kind of income. Q Well, who pays the bills? A Mr. Harrison."

$7551.91.[3] One of the checks given in payment of the treasury notes was for $7561.01. (3) The dividend checks, which, by the holding of this court, were the property of John, consisted of one check for $1089 and seven for $28 each. By utilizing the $1089 check and five of the $28 checks, plus the $14.88 check paid for one-half share of American Marietta, a total of $1248.88 would be produced. The three checks for $340 each used in paying for the treasury notes, plus $231.83 cash paid for that purpose, total $1251.83.

There is no direct evidence of any loan or deposit or sale of securities other than that herein above stated.

We note that in the present proceeding Louise Harrison when she learned of the garnishment, could have used the interpleader provisions of the garnishment statute. Section 525.090, RSMo 1949, V.A.M.S. See Baden Bank of St. Louis v. Trapp, Mo. App., 180 S.W.2d 755. By interpleading under that statute a determination of whether the surplus collateral was hers or John's could have been had. She chose not to subject herself to that test, and so cast the burden upon the insurance company. This failure to interplead takes on particular significance in view of the fact that she invoked those very garnishment statute procedures upon the occasion of the first garnishment when the two corporations were made garnishees. Here she evinced no desire and made no move to promote a resolution of the principal problem involved although the means thereto was readily available to her. Similarly when a deposition was scheduled she appeared but sat mute when asked a series of questions relating to the source of the purchase price of the treasury notes, to her earnings and acquisitions, to the disposition of the share certificates, and to other relevant matters. Obviously she and her husband were the persons who had the means most readily available to establish the ownership of the treasury notes. She refused to participate in the slighest degree in any move to show the court that her title to the treasury notes was unimpeachable. The inferences to be drawn from such conduct are not favorable to the pledgor Louise.

The Court is well aware that there is no evidence as to the precise disposition of the share certificates and checks received by John and Louise Harrison under their receipt dated July 29, 1959, and no direct evidence of the source of the funds used to purchase the treasury notes. However the evidence leaves it impossible reasonably to conclude that Louise had independent personal funds with which to make that purchase. Her own sworn testimony negatives any such possibility. At the same time there were in her and her husband's possession negotiable securities and checks which could readily be turned into cash; also these available instruments stood in her name, although all had been adjudged fraudulently conveyed to her in order to hinder and delay John's judgment creditor. Such instruments had a ready market value substantially in excess of the purchase price of the treasury notes.

In a civil proceeding the facts necessary to a recovery may be proved by circumstantial evidence. Vinson v. East Texas Motor Freight Lines, Mo., 280 S.W. 2d 124. A case may be made by circumstantial evidence alone. Schneider v. Prentzler, Mo., 391 S.W. 307. As stated in Miller v. Sabinske, Mo.App., 322 S.W.2d 941, "Proof by circumstantial evidence, as the term is usually understood, merely means that the proof of some of the necessary and principal facts must come, if at all, from proof of surrounding conditions from which the existence of the principal fact may be reasonably deduced. The circumstantial evidence while not directly proving the existence of the fact must give rise to a

---

3. The writer's computation differs slightly but insignificantly from that made by plaintiff's counsel.

logical inference that it exists." The qualification that the evidence must exclude guesswork, conjecture and speculation as to the existence of the necessary facts means that the fact finder must not reach a conclusion "by theorizing upon assumed factual premises outside of and beyond the scope of the evidence." Vinson v. East Texas Motor Freight Lines, supra.

■■■ Fraud may be established by circumstantial evidence. Finke v. Boyer, 331 Mo. 1242, 56 S.W.2d 372; Shepherd v. Woodson, Mo., 328 S.W.2d 1; Harrison v. Harrison, supra.

■■■ To recapitulate: The evidence conclusively shows (1) that Louise Harrison bought the treasury notes; (2) that Louise had no personal funds with which to make such purchase; (3) that she had in her possession, standing in her name, negotiable securities and checks which were the property of John Harrison; (4) that Louise and John declined to explain either the source of the purchase price of the treasury notes or the disposition of John's assets standing in the name of Louise. The inference that the treasury notes were purchased with the assets of John is irresistible. There is no other fact in evidence which is inconsistent with the latter inference, see Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511, or from which even an inconsistent inference may be drawn.

Judgment is affirmed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and THEODORE McMILLIAN, Special Judge, concur.